[No. H019973. Sixth Dist. Aug. 2, 2000.]

WEST SHIELD INVESTIGATIONS AND SECURITY CONSULTANTS et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
CHARLEEN EYMIL, Real Party in Interest.

[No. H019976. Sixth Dist. Aug. 2, 2000.]

PATHFINDERS WAY, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
CHARLEEN EYMIL, Real Party in Interest.

938

## COUNSEL

Koller, Koller & Associates, Daniel Koller and James J. Moneer for Petitioner West Shield Investigations and Security Consultants.

Low, Ball & Lynch, Thomas E. Mulvihill, Jennifer Rasmussen and Christopher E. Arras for Petitioner Pathfinders Way, Inc.

No appearance for Respondent.

McMannis, Faulkner & Morgan, James McMannis, William Faulkner, Rebecca Hughes and Doug Watanabe for Real Party in Interest.

**OPINION**

**WUNDERLICH, J.—**

### I. INTRODUCTION

In this original proceeding, we consider two issues of first impression which relate to the statute of limitations. First, petitioners assert that Code of Civil Procedure section 352,[1] which mandates that statutes of limitation are tolled for minors, no longer applies once the minor is emancipated because Family Code section 7050, subdivision (e)(4), expressly provides that an emancipated minor's adult powers include the right to sue. Second, petitioners contend that the one-year statute of limitations for personal injury actions, which is codified at section 340, subdivision (3), applies to claims of civil rights violations made under the Unruh Civil Rights Act, Civil Code section 51 et seq. (hereafter, Act). As we shall explain, we agree with petitioners on both issues.

Accordingly, because real party in interest Charleen Eymil was emancipated by court order before her 18th birthday, but her action against petitioners was not filed until more than one year later, all causes of action subject to the one-year statute of limitations for personal injury actions are time-barred. Petitioners are therefore entitled to summary adjudication of those causes of action. The remaining causes of action for intentional misrepresentation and fraud, however, are not time-barred or otherwise appropriate for summary adjudication. We therefore grant in part and deny in part the petitions for extraordinary relief from respondent court's order denying petitioners' motions for summary judgment or, in the alternative, summary adjudication.

### II. FACTUAL AND PROCEDURAL BACKGROUND

#### A. *Factual Background*

This matter arises from a teenager's forced attendance at a wilderness program for troubled youth. The parents of 16-year-old Charleen Eymil (hereafter, Eymil) sought assistance after Eymil ran away and was thought to be living with her 21-year-old boyfriend. They spoke with an educational consultant who recommended a wilderness program in New Mexico called Pathfinders, which was owned and operated by petitioner Pathfinders Way,

---

[1] All statutory references hereafter are to the Code of Civil Procedure unless otherwise noted.

Inc. (hereafter, Pathfinders). The consultant gave Eymil's parents a Pathfinders' brochure which advertised that the program provided a wilderness experience "to remove distractions and to provide the challenge needed to engage students in the emotional growth process."

After deciding to send their daughter to the Pathfinders wilderness program, Eymil's parents entered into a contract with Pathfinders. The contract provided that Pathfinders would be paid $12,500 for enrolling Eymil in a six-week wilderness expedition. The contract also provided that the parents were responsible for the cost of transporting their daughter to a site designated by Pathfinders. Petitioner West Shield Investigations and Security Consultants (hereafter, West Shield) was retained by the parents to transport Eymil. They executed a document entitled "Declaration of Authority," which stated that "[W]e have authorized Agents of West Shield Investigations to exercise all control over Charleen [Eymil], that we, the parents can exercise in the event that Charleen should need to be transported to Pathfinders, as we believe Charleen to be a danger to herself or others."

Thereafter, two employees of West Shield removed Eymil from her high school and transported her via airline to New Mexico. The flight was met by two Pathfinders representatives, who then drove Eymil to the Pathfinders program in the New Mexico desert. Eymil stayed in the Pathfinders wilderness program from October 22, 1993, until January 21, 1994. However, she found neither her attendance in the Pathfinders program, nor her transportation there by West Shield, to be pleasant experiences.

According to Eymil, the West Shield employees who came to her high school accomplished her removal by misrepresenting themselves to school personnel as detectives working for Santa Clara County Child Protective Services, displaying handcuffs, and suggesting they were carrying firearms. Eymil was not told where she was going as she was taken to the airport and accompanied by one West Shield employee on the flight to New Mexico. En route to the camp, she alleges, she was forced to strip, pull off her acrylic nails, put on Pathfinders clothing and sleep in a cold sleeping bag.

Eymil also had several complaints about her treatment after arrival at the Pathfinders camp, including being verbally abused by the owner of Pathfinders. Camp personnel forced her to hike from camp site to camp site while carrying a heavy pack, and she was not given any privacy for personal hygiene. Further, Eymil alleges that she was required to speak about private matters in group sessions, including being compelled to falsely accuse her mother of child molestation. Eymil was also frightened when she was forced

to put her hand in a campfire, and she believes that the lack of personal hygiene caused her to suffer fungus, yeast infections and diarrhea.

After her return to the Bay Area, Eymil was emancipated from her parents by court order on May 8, 1995.[2] At the time of her emancipation, she was 17 years of age. Eymil turned 18 on September 8, 1995.

## B. Procedural Background

### 1. The Complaint

On September 9, 1996, Eymil filed a lawsuit against Pathfinders and West Shield, as well as several individual defendants. The individual defendants included the owner of Pathfinders, Mike Parr, and Pathfinders employees William McBride and Chris Parfitt. Additionally, the complaint named as individual defendants the president of West Shield, Allen Cardoza, West Shield employees Joey Dusina and Linda Sveinson, and Miriam Boden, the educational consultant who recommended Pathfinders.[3] The currently operative pleading is the first amended complaint, filed September 4, 1997.

Based upon the facts set forth above, Eymil alleges 11 causes of action against all defendants, including (1) false imprisonment; (2) assault and battery; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) invasion of privacy; (6) intentional misrepresentation; (7) fraud and deceit—concealment; (8) interference with civil rights—Civil Code section 52.1; (9) sexual harassment—Civil Code section 51.9; (10) negligence; and (11) violation of the Interstate Compact on the Placement of Children.

### 2. Pathfinders' Motion for Summary Adjudication

Both the Pathfinders defendants (collectively, Pathfinders) and the West Shield defendants (collectively, West Shield) filed motions for summary judgment, or, in the alternative, summary adjudication. In their motion, Pathfinders made three principal arguments. First, they contended that the majority of plaintiff's claims were barred by the affirmative defense of the one-year statute of limitations for personal injury claims set forth in section 340, subdivision (3). The time-barred causes of action included false imprisonment, assault and battery, intentional infliction of emotional distress,

---

[2] Eymil contends that defendants did not provide admissible evidence of the date of her emancipation order with their motion for summary adjudication. However, review of the record shows that Eymil has never denied that she was emancipated on May 8, 1995, and that she admitted in deposition testimony that she was emancipated by court order at the age of 17.

[3] Defendant Miriam Boden is not a party to these original proceedings.

negligent infliction of emotional distress, invasion of privacy, interference with civil rights, sexual harassment, and negligence.

In support of this argument, defendants asserted that the one-year statute of limitations was not tolled until plaintiff's majority in accordance with section 352, but instead began to run when plaintiff was emancipated by court order on May 8, 1995. They explained that Family Code section 7050, subdivision (e)(4), provides that an emancipated minor is entitled to bring and prosecute a cause of action as of the date of emancipation, and therefore the one-statute of limitations applicable to plaintiff's claims expired one year after her emancipation, on May 8, 1996. Since plaintiff's original complaint was not filed until September 9, 1996, defendants argued it was untimely filed as to all tort and civil rights causes of action.

Second, Pathfinders contended that the sixth cause of action for intentional misrepresentation and the seventh cause of action for fraud lacked merit as a matter of law because plaintiff could not establish two necessary elements: the materiality of the alleged misrepresentations and her justifiable reliance on the misrepresentations. In the intentional misrepresentation cause of action, plaintiff alleged that defendants had made false representations as to the extent of their authority, the New Mexico destination, the nature of the Pathfinders program and the thoughts and feelings of plaintiff's parents. In the fraud cause of action, plaintiff alleged that defendants had concealed or suppressed the fact that plaintiff's parents were concerned about her, loved her and wanted to see her again. Defendants argued that the alleged misrepresentations were immaterial as a matter of law, because they could not have induced plaintiff to change her position when her position as a minor under her parents' custody and control was unchangeable. For the same reason, defendants contended that plaintiff could not establish justifiable reliance upon the alleged misrepresentations.

Finally, Pathfinders argued that the 11th cause of action for violation of the Interstate Compact on the Placement of Children lacked merit as a matter of law, because the Compact only applies to foster home or adoption situations.

### 3. West Shield's Motion for Summary Adjudication

In their motion for summary judgment or, in the alternative, summary adjudication, the West Shield defendants made the same argument as Pathfinders with respect to the affirmative defense of the statute of limitations: that plaintiff's tort and civil rights causes of action were barred by the section 340, subdivision (3) one-year statute of limitations because plaintiff

was emancipated prior to her 18th birthday. Likewise, West Shield argued that the Interstate Compact on the Placement of Children was inapplicable.

Additionally, West Shield asserted that all causes of action were barred by the "in loco parentis defense." According to West Shield, when they transported plaintiff they acted at all times within the scope of the lawful parental authority and/or agency which had been assigned to them by plaintiff's parents, and therefore they could have no liability to plaintiff.

### 4. *Plaintiff's Opposition to the Motions for Summary Adjudication*

First, plaintiff responded to defendants' contention that her tort and civil rights causes of action were time-barred. She requested the court take notice of the juvenile court's nunc pro tunc order of March 23, 1999, which corrected the court's previous emancipation order by stating, "The petitioner [Eymil] is declared to be emancipated for the purposes set forth in Family Code sections 7050 et seq., except for the purpose set forth in Section 7050[, subdivision] (e)(4). The minor's capacity to sue or be sued in the minor's own name is unaffected by this order. It is the court's intent that all statutes of limitations be tolled until the minor reaches the age of 18 on September 8, 1995."

Based on the nunc pro tunc order, plaintiff argued that the one-year statute of limitations did not begin to run until she reached the age of 18 on September 8, 1995, and therefore her complaint was timely filed one year later, on September 9, 1996. Plaintiff also contended that defendants' statute of limitations defense failed because defendants had provided neither a copy of the emancipation order nor any other admissible evidence of the emancipation order. Further, plaintiff asserted that the two causes of action she brought under the Act, the eighth cause of action for interference with civil rights and the ninth cause of action for sexual harassment, were not subject to the one-year statute of limitations. Instead, plaintiff contended that these causes of action were timely filed under the section 338, subdivision (a), three-year statute of limitations governing liability created by statute.

Regarding the sixth cause of action for intentional misrepresentation, plaintiff argued that this cause of action had merit because defendants failed to show that their conduct was within the scope of a parent's lawful authority to control a child. Also, plaintiff maintained that defendants' misrepresentations were material because they prevented her from attempting either to escape the Pathfinders program, call her parents, or contact local authorities, and whether her reliance on these misrepresentations was justifiable constitutes a question of fact which precluded summary adjudication.

As to the seventh cause of action for fraud, plaintiff argued that she had established a claim of fraud based upon defendants' concealment of the true facts about the Pathfinders program from her parents, which she could assert as a third party beneficiary of the contract between Pathfinders and her parents. However, plaintiff conceded that the eleventh cause of action for violation of the Interstate Compact on the Placement of Children was meritless.

### 5. Defendants' Reply

Defendants filed points and authorities in reply, objecting to plaintiff's contention that the juvenile court's nunc pro tunc order established that statutes of limitation were tolled until her 18th birthday. They argued that the nunc pro tunc order was of no legal effect, for two reasons. First, defendants pointed to the language of Family Code section 7050, which expressly states that an emancipated minor "shall" be considered an adult for the purpose of suing or being sued. They argued that the juvenile court had no authority to eliminate this mandatory consequence of emancipation, particularly when the legislative history of the statute indicated the Legislature's intent that emancipation be an all-or-nothing proposition with clearly defined consequences. Second, defendants argued that the juvenile court had no jurisdiction to make a nunc pro tunc order four years after the original emancipation order and three years after plaintiff had reached her majority.

Additionally, defendants contended that they had proven plaintiff's emancipation by admissible evidence. This evidence included plaintiff's admission during her deposition testimony that she had been emancipated at the age of 17, plus the nunc pro tunc order which on its face confirmed plaintiff's emancipation.

### 6. The Trial Court's Order

The trial court denied all of defendants' motions for summary judgment, and denied in part and granted in part the motions for summary adjudication. Summary adjudication of the first, second, third, fourth, fifth, eighth, ninth and tenth causes of action was denied. The court explained that these tort and civil rights claims were not time-barred, because "The March 23, 1999, Order Nunc Pro Tunc establishes that the statute of limitations was tolled for Plaintiff until September 8, 1995." Summary adjudication of the sixth cause of action for intentional misrepresentation and the seventh cause of action for fraud and concealment was also denied, because "Defendants have not met their initial burden of proof with respect to these causes of action, in that they have offered no evidence or authority to support their contention that

the actions of which Plaintiff complaints [*sic*] were either encompassed within the authority transferred to them by Plaintiff's parents or that, if they were, that such authority is legitimate, as a matter of law."

Subsequent to the trial court's order, Pathfinders and West Shield each filed writ petitions seeking extraordinary relief from the trial court's order denying their motions for summary judgment and denying in part their motions for summary adjudication. We issued an alternative writ and order to show cause, as well as a temporary stay of all trial court proceedings.[4]

## III. DISCUSSION

### A. *The Standard of Review for Orders Denying Summary Adjudication*

■ An order denying a motion for summary judgment or summary adjudication may be reviewed by way of a petition for writ of mandate. (§ 437c, subd. (*l*).) Where the trial court's erroneous denial of the motion will result in trial on nonactionable claims, a writ of mandate will issue. (*Travelers Casualty & Surety Co. v. Superior Court* (1998) 63 Cal.App.4th 1440, 1450 [75 Cal.Rptr.2d 54]; *Lompoc Unified School Dist. v. Superior Court* (1993) 20 Cal.App.4th 1688, 1692 [26 Cal.Rptr.2d 122].)

■ Since a motion for summary judgment or summary adjudication involves only questions of law, the standard of review is de novo. (*Travelers Casualty & Surety Co. v. Superior Court, supra,* 63 Cal.App.4th at p. 1450.) First, we review the motion to determine whether the defendant has met its initial burden to establish that one or more causes of action in the complaint has no merit, by showing that one or more elements of the cause of action cannot be established, or that there is a complete defense thereto. (§ 437c, subds. (f)(1), (o)(2).) Second, if the defendant has met this initial burden, we examine whether plaintiff has shown, by setting forth specific facts, that a triable issue of fact exists as to that cause of action or defense. (§ 437c, subd. (o)(2); *Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214 [51 Cal.Rptr.2d 642].)

In making its review, the appellate court need not defer to the trial court's decision. " 'We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale.' " (*Camp v.*

---

[4]We also make the following rulings on the parties' requests. Eymil's request to augment the record with three declarations not part of respondent court's record is denied. (Cal. Rules of Court, rule 56(c)(3).) Eymil's request for judicial notice of legislative history documents is granted. Pathfinders's request for judicial notice of legislative history documents is also granted.

*Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 629 [41 Cal.Rptr.2d 329], quoting *Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

B. *The Effect of Emancipation Upon the Statute of Limitations*

Petitioners Pathfinders and West Shield contend that all of Eymil's causes of action, other than the sixth cause of action for intentional misrepresentation and the seventh cause of action for fraud, are barred by the affirmative defense of one-year statute of limitations for personal injury actions. Petitioners maintain that the limitations period began running when Eymil was emancipated on May 8, 1995. Eymil, on the other hand, argues that the statute of limitations was tolled, by virtue of her minority and the juvenile court's nunc pro tunc order, until her 18th birthday on September 8, 1995. As discussed below, we agree with petitioners.

The general tolling provision for minors is codified at section 352, subdivision (a), which provides in pertinent part that, "If a person entitled to bring an action . . . is, at the time the cause of action accrued . . . under the age of majority . . . the time of disability is not part of the time limit for the commencement of the action." In other words, any statute of limitations which applies to the claims of a minor is tolled until the minor reaches the age of 18. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 634, pp. 813-815.)

The rationale for the minor's tolling provision relates to a minor's legal disability. "Because a minor does not have the understanding or experience of an adult, and because a minor may not bring an action except through a guardian . . . special safeguards are required to protect the minor's right of action." (*Amie v. Superior Court* (1979) 99 Cal.App.3d 421, 426 [160 Cal.Rptr. 271].) Therefore, statutes of limitations are tolled to protect the minor's rights from being destroyed during the period of disability. (See *Williams v. Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 602 [68 Cal.Rptr. 297, 440 P.2d 497]; *Tzolov v. International Jet Leasing, Inc.* (1991) 232 Cal.App.3d 117, 121 [283 Cal.Rptr. 314].) The tolling provision is not easily overcome. "The tolling provisions of [Code of Civil Procedure section] 352 prevail over special time limitations contained in specific statutes, in the absence of a contrary expression of legislative intent." (3 Witkin, Cal. Procedure, *supra*, Actions, § 634, p. 814; see also *Jessica H. v. Allstate Insurance Co.* (1984) 155 Cal.App.3d 590, 592 [202 Cal.Rptr. 239].)

Thus, the question in the present case is whether there is a clear expression of legislative intent that the minor's tolling provision of section

352, subdivision (a), be lifted before the age of majority when a minor has been emancipated by court order. We find such clear expression in the statutory scheme for the emancipation of minors, as set forth in Family Code section 7000 et seq.

This statutory scheme is derived from the California Emancipation of Minors Act (hereafter, the Emancipation Act), Civil Code section 60 et seq., which was originally enacted in 1978. At that time, the law concerning the emancipation of minors consisted of a combination of statute and case law, and the Legislature saw a need for clarification. (Cal. Health & Welfare Agency, Enrolled Bill Rep. on Sen. Bill No. 1473 (1977-1978 Reg. Sess.) Sept. 7, 1978, pp. 1-2); see *Jolicoeur v. Mihaly* (1971) 5 Cal.3d 565, 580 [96 Cal.Rptr. 697, 488 P.2d 1] [parental relinquishment constitutes emancipation of minor, which may be "express or implied, complete or partial, conditional or absolute"].) The Emancipation Act was introduced with a stated purpose, "to provide a clear statutory definition of emancipation and allow minors to obtain a court declaration of such status." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1473 (1977-1978 Reg. Sess.) undated, p. 1.) The statutory definition of emancipation was also intended to clarify the legal consequences of emancipation. The legislative history includes the comment that "[m]inors who are technically emancipated often encounter difficulties in such matters as renting apartments under their own names or entering into business or retail-purchase contracts. Therefore, this bill was introduced in order to provide such minors with a means of obtaining a judicial declaration of their emancipation which can then be relied upon by the world at large in its dealings with the minor." (Sen. Com. on Judiciary, Bill Dig. on Sen. Bill No. 1473 (1977-1978 Reg. Sess.) as amended June 13, 1978, p. 2.)

Thus, an important goal of the Emancipation Act was to "specify the purposes for which [an emancipated minor] is to be considered an adult." (Legis. Counsel, Rep. on Enrolled Bill, Sen. Bill No. 1473 (1977-1978 Reg. Sess.) p. 1.) Eleven such purposes were included in the Emancipation Act, including "sueing [*sic*] and being sued in his own name," which were codified at former Civil Code section 63. (Sen. Com. on Judiciary, Bill Dig. on Sen. Bill No. 1473, *supra*, as amended June 13, 1978, p. 3.) In 1992, former Civil Code section 63 was continued without substantive change to Family Code section 7050. (Cal. Law Revision Com. com., 29E West's Ann. Fam. Code (1994 ed.) foll. § 7050, p. 101.)

Now entitled the "Emancipation of Minors Law," the purpose of the 1992 enactment was set forth in Family Code section 7001: "It is the purpose of this part to provide a clear statement defining emancipation and its consequences and to permit an emancipated minor to obtain a court declaration of

the minor's status." The consequences of emancipation were enumerated in Family Code section 7050, which provides, in pertinent part, "[a]n emancipated minor *shall* be considered as being an adult for the following purposes," (italics added). Among these purposes are "[t]he minor's capacity to do any of the following," which includes, "[s]ue or be sued in the minor's own name." (Fam. Code, § 7050, subd. (e)(4).)

Thus, the plain language of Family Code section 7050, subdivision (e)(4), mandates that a legal consequence of court-ordered emancipation is the adult power to sue or be sued. The mandatory nature of this legal consequence is indicated by the Legislature's use of the word "shall" ("[a]n emancipated minor shall be considered an adult for the following purposes") in Family Code section 7050, subdivision (e). The word "shall" is usually deemed mandatory, unless a mandatory construction would not be consistent with the legislative purpose underlying the statute. (*People v. Superior Court (Zamudio*) (2000) 23 Cal.4th 183, 194 [96 Cal.Rptr.2d 463, 999 P.2d 686].) Since the Legislature intended Family Code section 7001 to "provide a clear statement defining emancipation and its consequences," construing the word "shall" in section 7050, subdivision (e), as mandatory is consistent with its legislative purpose.

Further, nothing in the statutory language or the legislative history for the 1978 Emancipation Act or the 1992 Emancipation of Minors Law indicates that the Family Code section 7050 list of legal consequences can be modified by the trial court when issuing a court declaration of emancipation pursuant to Family Code section 7122. Court modification of the legal consequences of emancipation would defeat the Legislature's intent to authorize a judicial declaration of emancipation "which can then be relied upon the world at large in its dealings with the minor." (Sen. Com. on Judiciary, Bill Dig. on Sen. Bill No. 1473, *supra*, as amended June 13, 1978, p. 2.) Stated otherwise, if the trial court could pick and chose among the list of legal consequences of emancipation set forth in Family Code section 7050, the result would be partial emancipation, ·with different emancipated minors holding different adult powers. This undesirable result is exactly that which the Legislature sought to eliminate when it enacted the Emancipation Act.

For these reasons, a minor who is emancipated by court order pursuant to Family Code section 7000 et seq., is, by operation of law, subject to all legal consequences of emancipation which are set forth in Family Code section 7050, including the right to sue or be sued in the minor's own name. Once emancipated, a minor is under no legal disability with respect to bringing his or her own claims. Therefore, the minor's tolling provision of section 352,

subdivision (a), no longer applies and the emancipated minor's causes of action accrue on the date of emancipation.

In the present case, it is undisputed that Eymil was emancipated by an order of the Santa Clara Superior Court on May 8, 1995. This means that the one-year statute of limitations began running on the date of emancipation and expired no later than May 9, 1996. Since real party in interest's complaint was not filed until September 9, 1996, all causes of action in the complaint which are subject to the section 340, subdivision (3), one-year statute of limitations are time-barred as a matter of law. These include the tort causes of action for false imprisonment, assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy and negligence. Petitioners are entitled to summary adjudication of each of these causes of action in the first amended complaint. And, as we explain below, petitioners are likewise entitled to summary adjudication of the civil rights causes of action.

## C. *The Nunc Pro Tunc Order Has No Legal Effect*

Before considering the issue of the statute of limitations applicable to state civil rights claims, we address Eymil's contention that the juvenile court's nunc pro tunc order was effective to toll all statutes of limitation applicable to her claims until her majority. On March 23, 1999, over three years after real party reached her majority, the juvenile court granted Eymil's petition for emancipation nunc pro tunc, stating, "The petitioner is declared to be emancipated for the purposes set forth in Family Code sections 7050 et seq., except for the purpose set forth in Section 7050[, subdivision] (e)(4). The minor's capacity to sue or be sued in the minor's own name is unaffected by this order. It is the court's intent that all statutes of limitations be tolled until the minor reaches the age of 18 on September 8, 1995."

Petitioners object to the validity of this order, on grounds that the order exceeds the scope of the trial court's nunc pro tunc power as well as its power to emancipate a minor under Family Code section 7050. Petitioners are correct. ■ The nunc pro tunc power is limited to " 'correct[ing] the record of a judgment.' " (*Estate of Eckstrom* (1960) 54 Cal.2d 540, 544 [7 Cal.Rptr. 124, 354 P.2d 652].) "[I]t is not proper to amend an order nunc pro tunc to correct judicial inadvertence, omission, oversight or error, or to show what the court might or should have done as distinguished from what it actually did." (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 891 [67 Cal.Rptr.2d 407].) Thus, while the court may enter a nunc pro tunc order to correct clerical errors in the original order, or to enter the proper date of

entry of order when the order was not filed timely due to inadvertence, it may not correct judicial error. (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, §§ 65, 67, pp. 593, 594-595.) Judicial error is an erroneous decision, as opposed to an inadvertent clerical error. (7 Witkin, *supra*, Judgment, § 68. pp. 595-597.)

In the record before us, we find no indication that the juvenile court's nunc pro tunc order properly corrects a clerical error. The juvenile court does not state that it originally intended to order that the statute of limitations applicable to Eymil's claims be tolled despite her emancipation, and that this ruling was inadvertently omitted from the original emancipation order due to clerical error. However, even assuming the error was clerical, nunc pro tunc correction was not proper. The court did not have the authority to make an emancipation order which preserved the minor's legal disability regarding her right to sue or be sued. As we have discussed, Family Code section 7050 does not provide for partial emancipation, and it is a mandatory consequence of emancipation that tolling ceases and statutes of limitation begin to run on the date of emancipation. Therefore, the juvenile court's nunc pro tunc order of March 23, 1999, is of no legal effect and does not operate to prevent the accrual of Eymil's causes of action as of the date of her emancipation.

D. *Unruh Civil Rights Act Claims Are Subject to the One-year Statute of Limitations*

We turn now to petitioners' contention that Eymil's causes of action for interference with civil rights (Civ. Code, § 52.1) and sexual harassment (Civ. Code, § 51.9) are subject to the section 340, subdivision (3), one-year statute of limitations, and not, as Eymil contends, the section 338, subdivision (a), three-year limitations period for an action upon a liability created by statute. In Eymil's view, these two causes of action are based upon a liability created by statute because each cause of action alleges a violation of the Act, as codified at Civil Code section 51 et seq., and seeks civil penalties not available at common law.[5]

No California state appellate court has ruled on the issue of the applicable statute of limitations for claims of Unruh Civil Rights Act violations. The only published decisions which address the issue are decisions of the federal courts. In *Mitchell v. Sung* (N.D.Cal. 1993) 816 F.Supp. 597, the federal district court concluded that the applicable limitations period is the section 340, subdivision (3) one-year statute of limitations for California personal

---

[5] Civil Code section 51 provides, in pertinent part, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

injury actions. The court explained that "The Unruh Act seeks to protect against personal injury. Thus, a one-year statute of limitations period must be applied to plaintiff's Unruh Act claim." (*Mitchell v. Sung, supra*, 816 F.Supp. at p. 602.)

However, three subsequent federal decisions have concluded otherwise. The Ninth Circuit in *Olympic Club v. Underwriters at Lloyd's London* (9th Cir. 1993) 991 F.2d 497, 501, footnote 11 (hereafter, *Olympic Club),* stated in dicta that the statute of limitations for claims under the Act is the three-year period for actions based on statutory liability provided by section 338, subdivision (a). In *Indep. Housing Services v. Fillmore Ctr.* (N.D.Cal. 1993) 840 F.Supp. 1328, 1359 (hereafter, *Indep. Housing Services),* the federal district court ruled that because there appeared to be no common law cause of action for lack of building access (as alleged in plaintiff's state statutory causes of action), the court "presumes that the three-year period established by section 338[, subdivision] (a) is the proper statute of limitations for state statutory claims other than the Unfair Business Practice Act." More recently, the federal district court, without analysis, followed *Olympic Club and Indep. Housing Services* in stating that the applicable statute of limitations for claims under the Act is the three-year limitations period for state statutory claims. (*Kramer v. Regents of University of California* (N.D.Cal. 1999) 81 F.Supp.2d 972, 977.)

We agree with the federal court in *Mitchell v. Sung, supra*, 816 F.Supp. 597, that the one-year statute of limitations is applicable. Our analysis begins with a review of common law, because " '[a] cause of action is based upon a *liability created by statute* " 'only where the liability is embodied in a statutory provision *and was of a type which did not exist at common law.*' " ' " (*Briano v. Rubio* (1996) 46 Cal.App.4th 1167, 1177 [54 Cal.Rptr.2d 408], italics in original.) Thus, where a cause of action is based upon a statute which did not "create a new form of liability . . . but merely codified and refined existing law," the section 338 three-year limitations period for actions based upon statutory liability does not apply. (*Briano v. Rubio, supra*, 46 Cal.App.4th at p. 1179.)

Accordingly, resolution of this issue depends upon whether the Act created a new form of liability, or whether liability for violation of civil rights is derived from common law. Our Supreme Court has indicated that common law contains the roots of the Act. "The general policy embodied in [Civil Code] section 51 can be traced to early common law doctrine that required a few, particularly vital, public enterprises—such as privately owned toll bridges, ferryboats, and inns—to serve all members of the public

without arbitrary discrimination." (*Warfield v. Peninsula Golf & Country Club* (1995) 10 Cal.4th 594, 607 [42 Cal.Rptr.2d 50, 896 P.2d 776].) In 1897, "California joined a number of other states in enacting its own initial public accommodation statute, the statutory predecessor of the current version of section 51 . . . [and in 1959] the Legislature undertook, through enactment of the Unruh Civil Rights Act, to revise and expand the scope of the then-existing version of section 51." (*Id.* at pp. 607-608.)

Thus, because the Act, as set forth at Civil Code section 51 et seq., constitutes a refinement and codification of existing common law liability for violation of civil rights, the applicable statute of limitations for claims under the Act is section 340, subdivision (3), the one-year limitations period for personal injury actions, rather than the section 338, subdivision (a), the three-year limitations period for liability created upon a statute. This conclusion is consistent with the statutory language of section 340, subdivision (3), which provides that the one-year limitations period applies to actions for "injury to . . . one caused by the wrongful act or neglect of another." Moreover, section 340, subdivision (3) "has been interpreted to be 'a special statute controlling the time within which *any action* covering such [personal] injury may be commenced, and it prevails over the general statute applicable to actions based upon a "liability created by statute." ' " (*Jackson v. Cedars-Sinai Medical Center* (1990) 220 Cal.App.3d 1315, 1322 [269 Cal.Rptr. 877], italics in original.)

Our conclusion is also consistent with rulings made in the context of analogous federal civil rights law, as set forth in 42 United States Code section 1983. It is well established that federal civil rights claims are personal injury actions because the claims sound in tort. (*Wilson v. Garcia* (1985) 471 U.S. 261, 277-280 [105 S.Ct. 1938, 1947-1949, 85 L.Ed.2d 254].) Therefore, "the appropriate statute of limitations is the statute of limitations for personal injury causes of action in the particular state in which the case is filed." (*Jackson v. Cedars-Sinai Medical Center, supra*, 220 Cal.App.3d at p. 1323.) In California, the applicable statute of limitations for civil rights actions brought under 42 United States Code section 1983 is the one-year statute of limitations for personal injury actions, section 340, subdivision (3). (*Jackson v. Cedars-Sinai Medical Center, supra*, 220 Cal.App.3d at pp. 1323-1324.)

In the present case, application of the one-year statute of limitations to Eymil's eighth cause of action for "Interference with Civil Rights—Civil Code Section 52.1" and ninth cause of action for "Sexual Harassment—Civil Code Section 51.9" results in both causes of action being time-barred as a

matter of law. As we have discussed, Eymil's complaint was not filed within the one-year period following her emancipation. Therefore, petitioners are entitled to summary adjudication of the two civil rights causes of action in Eymil's first amended complaint.

### E. Retroactivity of Decision

 We asked the parties to address the issue of whether, in the event this court concluded that the minor's tolling provision of section 352, subdivision (a) was not applicable once the minor is emancipated, the court's decision should be applied retroactively. The general rule is that judicial decisions are applied retroactively, with two exceptions: (1) when to do so would unfairly undermine the reasonable reliance of the parties on the existing state of the law; or (2) when the decision announces a new rule of law. (*Gentis v. Safeguard Business Systems, Inc.* (1998) 60 Cal.App.4th 1294, 1305-1306 [71 Cal.Rptr.2d 122].) Thus, "considerations of fairness and public policy may require that a decision be given only prospective application." (*Woods v. Young* (1991) 53 Cal.3d 315, 329-330 [279 Cal.Rptr. 613, 807 P.2d 455] (hereafter, *Woods*).)

In *Woods*, the California Supreme Court held that its decision regarding the calculation of the limitations period for medical malpractice actions would be applied prospectively only in the interests of fairness. Our Supreme Court noted that seven earlier, Courts of Appeals decisions existed which had decided the issue contrary to the Supreme Court's new ruling shortening the limitations period, and found that the plaintiff could have reasonably relied on these decisions in determining when to file suit. (*Woods, supra,* 53 Cal.3d at pp. 329-330.) In contrast, where the plaintiffs could not claim reliance upon a consistent line of decisions making the appellate court's new ruling "unforeseeable," it was determined that no justification existed to depart from the general rule of retroactivity. (*Planning and Conservation League v. Department of Water Resources* (1998) 17 Cal.4th 264, 274 [70 Cal.Rptr.2d 635, 949 P.2d 488].)

 Eymil argues that our decision should be applied prospectively, based on considerations of fairness and justice. She states that she reasonably relied upon "the intent of both the juvenile court and the attorney representing her that she <u>not</u> be emancipated for the purpose of having the capacity to sue and be sued." (Underscore in original.) Petitioners respond that the case at bar involves the application of a statute, Family Code section 7050, subdivision (e)(4), and a statute is applied prospectively from the date it takes effect unless the Legislature decides otherwise. Since Family Code

7050, subdivision (e)(4), became effective in 1978, petitioners maintain that the statute must apply to bar Eymil's action.

After careful consideration, we reject Eymil's argument and conclude that our decision must apply retroactively. Departure from the general rule of retroactivity of judicial decisions is not warranted here, because our decision does not constitute a new rule which unforeseeably changed a former rule on which Eymil could have reasonably relied. Instead, we merely enforce the plain language of Family Code section 7050, subdivision (e)(4), which provides that an emancipated minor may sue or be sued in his or her own name. We have found no decisions, nor have the parties brought any to our attention, which are contrary to this plain language or which suggest that tolling of statutes of limitation continues after emancipation. Where there is no decisional authority addressing an issue, a party cannot have relied, "reasonably or otherwise, on any established body of California decisional authority," and retroactive application of a decision does not constitute an injustice. (*Gentis v. Safeguard Business Systems, Inc., supra,* 60 Cal.App.4th at p. 1306.)

Thus, because there was no body of decisional law or other legal authorities upon which Eymil could have relied in deciding that her causes of action did not accrue until her majority, our decision to the contrary must be applied retroactively.

F. *The Remaining Causes of Action Cannot Be Summarily Adjudicated*

However, our decision regarding the tolling of the statute of limitations does not result in summary adjudication of the sixth cause of action for intentional misrepresentation or the seventh cause of action for intentional fraud and concealment. Petitioners implicitly concede that these causes of action are not subject to the section 340, subdivision (3) one-year limitations period, and we agree. The applicable statute of limitations is the section 338, subdivision (d), three-year limitations period for relief on the ground of fraud or mistake. However, petitioners assert that these two causes of action nevertheless lack merit as a matter of law and should be summarily adjudicated.

In her sixth and seventh causes of action, Eymil alleges generally that petitioners misrepresented and/or concealed the extent of their authority, her destination, the nature of the Pathfinders program, and her parents' thoughts and feelings of love and care, and that her justifiable reliance on these misrepresentations prevented her from attempting to escape the program or contact her parents or the local authorities. Petitioners argued in

their summary adjudication motions that these causes of action lacked merit because (1) the alleged misrepresentations were not material; and (2) as a minor, Eymil could not justifiably rely on the purported misrepresentations because she had no authority to alter the position in which her parents placed her. The trial court ruled that petitioners had not met their initial burden on summary adjudication as to these causes of action, because they had not provided any evidence or authority to support their contention that petitioners' conduct was nonactionable because it was within the scope of parental authority assigned to petitioners or that such exercise of parental authority was legitimate as a matter of law.

We agree with the trial court. Petitioners have not met their initial burden and therefore summary adjudication cannot be granted. Primarily, we find that petitioners' argument is insufficient to establish as a matter of law that they have no liability because they acted within the scope of lawful parental authority assigned to them by Eymil's parents. ▓▓ Our Supreme Court has ruled that the parents may be liable to their minor children for negligent exercise of familial duties and powers. "[A]lthough a parent has the prerogative and the duty to exercise authority over his minor child, this prerogative must be exercised within reasonable limits." (*Gibson v. Gibson* (1971) 3 Cal.3d 914, 921 [92 Cal.Rptr. 288, 479 P.2d 648]; see also *People v. Whitehurst* (1992) 9 Cal.App.4th 1045, 1050 [12 Cal.Rptr.2d 33] ["a parent who willfully inflicts unjustifiable punishment is not immune from either civil liability or criminal prosecution" (italics omitted)].) The test of the reasonableness of the parent's conduct is "what would an ordinarily reasonable and prudent *parent* have done in similar circumstances?" (*Gibson v. Gibson, supra,* 3 Cal.3d at p. 921, italics in original.)

▓▓ Hence, a parent has no absolute immunity, and to obtain summary adjudication of a tort claim by a minor child must establish that the allegedly wrongful exercise of parental authority was within reasonable limits as a matter of law. In the present case, therefore, petitioners had the initial burden to establish that (1) they were acting in loco parentis; and (2) their conduct in allegedly misrepresenting or concealing the facts of Eymil's transportation to and detention at the Pathfinders camp was within the scope of what an ordinarily reasonable and prudent parent would have done in similar circumstances. Eymil does not dispute that petitioners were acting in loco parentis. However, on the record before us, we cannot conclude as a matter of law that petitioners' conduct was nonactionable because it was reasonable and therefore within the scope of lawful parental authority.

Nor can we determine as a matter of law that the alleged misrepresentations and fraudulent concealment were not material or that Eymil's reliance

upon them was not justifiable, without usurping the role of the trier of fact. Questions of materiality and justifiable reliance constitute questions of fact which cannot be resolved on summary adjudication, unless, in contrast to the present case, "the undisputed facts leave no room for a reasonable difference of opinion." (*Blankenheim v. E.F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475 [266 Cal.Rptr. 593].) For these reasons, summary adjudication of the sixth cause of action for intentional misrepresentation and the seventh cause of action for fraudulent concealment was properly denied.

## IV. DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order of April 8, 1999, denying the motions of petitioners for summary adjudication of the first, second, third, fourth, fifth, eighth, ninth and tenth causes of action, and to enter a new and different order granting summary adjudication of each cause of action. In all other respects, the petitions for writ relief are denied. The temporary stay order is vacated. Costs in this original proceeding are awarded to petitioners.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.

A petition for a rehearing was denied August 23, 2000, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied November 1, 2000.