[No. B149847. Second Dist., Div. One. May 1, 2002.]

EDDIE JAVOR, Plaintiff and Appellant, v.
MARK TAGGART et al., Defendants and Respondents.

**COUNSEL**

Cole & Loeterman and Dana M. Cole for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Jim Schiavenza, Assistant Attorney General, Joel Davis, Marsha Miller, Richard Rojo and Vladimir Shalkevich, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**MALLANO, J.**—Plaintiff is a licensed general building contractor. The State of California erroneously concluded that one of his employees had been injured on the job and that he did not have workers' compensation insurance at the time. The state paid benefits to the injured worker and recorded a lien against plaintiff's residence.

Four years after the lien was recorded, plaintiff retained counsel, pursued administrative remedies, and prevailed. The state cancelled the lien.

Thereafter, plaintiff filed this action, alleging a federal civil rights claim (42 U.S.C. § 1983) and several state law claims. The trial court found that the federal claim was barred by the statute of limitations and that, on the state claims, the defendants were immune from suit (Gov. Code, § 821.6).

The principal question on appeal is whether the limitations period on the federal claim was tolled while plaintiff pursued state remedies under the California Government Claims Act (Gov. Code, § 810 et seq.). We conclude that state "notice of claim" statutes, like the California Government Claims Act, do not toll the time within which to file a federal civil rights claim. We affirm.

I

BACKGROUND

On May 14, 1991, Jason Gonzales was injured in a work-related accident while employed by Premiere Construction Services. Premiere did not have workers' compensation insurance, so the California Uninsured Employers Fund (UEF) paid benefits, which totaled $37,000. The UEF then looked to Gonzales's uninsured employer for reimbursement.

In conducting business, Premiere had used, without permission, the contractor's license number of plaintiff Eddie Javor. On or about March 10, 1994, defendant Mark Taggart, an employee of the UEF, made a prima facie determination that Javor had been Gonzales's employer and that Javor had been illegally uninsured. Notice was sent to Javor.

Javor responded by letter on March 22, 1994, explaining that Premiere had used his contractor's license number without his consent and that he had never employed Gonzales. Notwithstanding Javor's documentary evidence and objections, the UEF concluded that he had been Gonzales's employer. On May 2, 1994, the UEF recorded a lien against Javor's residence in the amount of $37,000.

Over the next four years, Javor attempted sporadically to rectify the situation, sending letters to various state employees and talking to them by telephone. His efforts were not successful.

Eventually, Javor retained an attorney, who filed a motion with the Workers' Compensation Appeals Board (WCAB) on June 8, 1998, seeking to remove the lien. On October 6, 1998, a workers' compensation judge ruled in Javor's favor.

The UEF sought reconsideration of the ruling. In a decision dated December 29, 1998, the WCAB granted reconsideration and sent the matter back for further proceedings. In granting reconsideration, the WCAB expressly found that the UEF had violated Javor's right to due process by failing to provide a hearing in order to determine whether he was, in fact, Gonzales's employer. On remand, the workers' compensation judge again found in Javor's favor. On March 25, 1999, the UEF recorded a "Certificate of Cancellation of Lien," stating that the May 2, 1994 lien had been filed in error.

On August 23, 1999, Javor filed a claim for damages with the State Board of Control. On October 19, 1999, the board denied the claim. By letter dated October 29, 1999, the board informed Javor of its decision. The letter also stated: "WARNING [¶] 'Subject to certain exceptions, you have only six months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim'. See Government Code Section 945.6. You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

Javor filed this action on February 10, 2000, alleging causes of action for violation of federal civil rights, slander of title, inverse condemnation, and negligence. On June 26, 2000, Javor filed a first amended complaint. Following a demurrer to the first amended complaint, which was sustained with leave to amend, Javor filed a second amended complaint on October 13, 2000.

The second amended complaint named Taggart as the only defendant and alleged a single claim for violation of Javor's federal civil rights. More specifically, Javor alleged that Taggart had violated his right to due process. Taggart filed a demurrer, arguing that the claim was barred by the statute of limitations. The trial court sustained the demurrer without leave to amend as to the federal claim but granted leave to allege causes of action based on any new legal theories.

On January 11, 2001, Javor filed a third amended complaint, alleging causes of action for slander and clouding of title, intentional infliction of

emotional distress, negligence, and violation of the state Constitution. Named as defendants were Taggert and two other state employees, Susan Johnson and Lloyd W. Aubrey, Jr. All three defendants demurred to the complaint on the ground that they were immune from suit under the California Government Claims Act. The trial court sustained the demurrer without leave to amend and dismissed the action. Javor filed a timely appeal.

## II

### DISCUSSION

■ In reviewing the ruling on a demurrer, "we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed.' . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. . . . And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. . . . The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], citations omitted.)

■ On appeal, Javor argues that the federal civil rights claim was timely filed under various equitable and tolling doctrines and that defendants are not immune from suit. We disagree.

### A. *Federal Civil Rights Claim (Second Amended Complaint)*

In his opening brief, Javor states that the sole issue as to the federal civil rights claim is "whether the statute of limitations to file a federal civil rights action under 42 U.S.C. 1983 ran from one of the following events: [¶] 1. One year from December 29, 1998, when the WCAB issued its ruling . . . finding that plaintiff's constitutional rights had been violated by the state . . . or [¶] 2. Six months from the date plaintiff received the state's claim rejection letter, which provided that plaintiff had six months from that date of rejection to file a lawsuit."

Javor's federal civil rights (due process) claim was brought under title 42, section 1983 of the United States Code, which states: "Every person who,

under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." (Hereafter section 1983 or Civil Rights Act.)

■ "In California, the applicable statute of limitations for civil rights actions brought under 42 United States Code section 1983 is the one-year statute of limitations for personal injury actions, [Code of Civil Procedure,] section 340, subdivision (3)." (*West Shield Investigations & Security Consultants v. Superior Court* (2000) 82 Cal.App.4th 935, 953 [98 Cal.Rptr.2d 612].)

" 'Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues.' . . . Under federal law, 'a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.' " (*Knox v. Davis* (9th Cir. 2001) 260 F.3d 1009, 1013.)

■ Arguably, Javor's due process claim accrued in May 1994, when he learned that a lien had been filed against his property. But Javor argues in his opening brief that his "cause of action did not accrue until the WCAB declared on December 29, 1998, that Taggart violated his constitutional rights." Javor filed this action on February 10, 2000. Thus, under the scenario urged by Javor, the instant case was filed more than one month after the statute of limitations expired unless the running of the limitations period was tolled or suspended under any of three doctrines, as follows.

1. *Equitable Tolling*

■ Under the doctrine of equitable tolling, the limitations period is suspended "where the record shows '(1) timely notice to the defendant in filing the *first* claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim.' " (*Daviton v. Columbia/ HCA Healthcare Corp.* (9th Cir. 2001) 241 F.3d 1131, 1137-1138, italics added.) ■ That did not happen here. Taggart, the only defendant on the federal civil rights claim, was not a party to Javor's first claim, namely, the administrative claim filed against the UEF and adjudicated by the WCAB. Nor does Javor assert that Taggart knew about the first claim. In short,

" '[d]efendants were [*not*] informed at all times of the nature of plaintiffs' claims.' " (*Id.* at p. 1137, italics added.)

### 2. Equitable Estoppel

Javor's reliance on equitable estoppel is also misplaced. " 'Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. . . .' " (*Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1044 [75 Cal.Rptr.2d 777].) In this case, Javor was not ignorant of the "true" facts. Quite the opposite. From the very beginning, he was keenly aware of the wrong done to him. Further, equitable estoppel does not apply because Javor did not rely on any statement or action by Taggart in deciding when to file suit.

### 3. California Government Claims Act

Nor did the state claims act toll the limitations period. "The purpose of the . . . Act . . . is to provide the [accused] public entity [with] sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. . . . Submission of a claim to a public entity pursuant to [the Act] is a condition precedent to a [civil] action and the failure to present the claim bars the action." (*Paramount Unified School Dist. v. Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371, 1387 [32 Cal.Rptr.2d 311], citations omitted.) Government Code section 945.6 requires that a claimant file a civil action within six months after the public agency issues its decision.

 Javor filed a claim with the state Board of Control on August 23, 1999. The board denied his claim on October 19, 1999, and so notified him by letter dated October 29, 1999. The letter stated that he had six months in which to file suit—on or before April 29, 2000. This action was filed on February 20, 2000, and was therefore timely for purposes of the state claims act. But, as we shall explain, the act does not affect the running of the limitations period on a section 1983 claim. The courts have long recognized the procedural differences between the state claims act and section 1983.

 At the outset, we note that a plaintiff does not have to file a claim under the state claims act as a prerequisite to filing a section 1983 action.

"[T]he California remedy of recourse to the [Government] Claims Act need not be first sought before a plaintiff is free to invoke the Civil Rights Act. While there may be considerable overlap between the two statutes in given circumstances, the purposes underlying them are distinct. The state scheme . . . was conceived to strictly limit governmental liability; the federal legislation, by contrast, was designed to ensure an adequate remedy for violations of civil rights. The [six-month] claim provision . . . is a condition precedent to the maintenance of an action under state law. . . . And while it may be constitutionally permissible for the Legislature to place this substantive impediment in the path of a state cause of action, it is clear that the supremacy clause will not permit a like abrogation of the perquisites of a federal civil rights litigant." (*Williams v. Horvath* (1976) 16 Cal.3d 834, 842 [129 Cal.Rptr. 453, 548 P.2d 1125], citations omitted.)

 In rejecting a plaintiff's contention that the limitations period on her federal civil rights claim was tolled by the prior filing of a state law claim, the Ninth Circuit Court of Appeals stated: "[S]tate and federal claims . . . constitut[e] legally distinct wrongs. Because the appellant elected to pursue only one remedy as to one distinct wrong[, filing suit against a state governmental agency under state law], the [federal] district court did not err in holding that the statute of limitations relevant to the appellant's federal civil rights action had not been equitably tolled by her previous filing of the state tort claim action." (*Ervin v. Los Angeles County* (9th Cir. 1988) 848 F.2d 1018, 1019-1020; see also *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1086 [195 Cal.Rptr. 576] [pursuit of civil rights action in federal court does not toll limitations periods imposed by California Government Claims Act].)

Similarly, in *Stone v. City and County of San Francisco* (N.D.Cal. 1990) 735 F.Supp. 340, the court stated: "In the present case, plaintiff claims that the statute of limitations on his section 1983 claim was tolled during the pendency of his state administrative remedies. Specifically, [plaintiff] submits that these remedies consisted of his [internal department] complaint and the claim filed pursuant to [the] California [Government] Claims Act . . . . The court, however, finds plaintiff's contention untenable. [¶] . . . [¶]

"[I]t is clear that the remedies and procedures in the [Government] Claims Act and the Civil Rights Act are separate and independent . . . . The court concludes that plaintiff's [state law] tort claim is not sufficient to toll the statute of limitations on his section 1983 action. Accordingly, as a matter of law, plaintiff's section 1983 claim is barred by the statute of limitations." (*Stone v. City & County of San Francisco, supra*, 735 F.Supp. at pp. 343-345.)

More recently, the Ninth Circuit addressed the issue now before us. In *Silva v. Crain* (9th Cir. 1999) 169 F.3d 608 (*Silva*), the plaintiff's claim was based on an incident that occurred on September 10, 1996. For purposes of the state claims act, plaintiff filed a claim with the appropriate public agency that was denied on April 28, 1997. The plaintiff filed a section 1983 action on October 27, 1997—within six months after the agency's denial of the claim but more than one year after the cause of action accrued. The district court found that the action was time-barred. The Ninth Circuit affirmed, stating:

"We have previously declared that in California the general, residual statute of limitations for personal injury actions is the one year period set forth in California Civil Procedure Code section 340(3). . . .

"But, argues [plaintiff], when a person presents a damage claim to a public agency pursuant to the California [Government] Claims Act, a different special statute of limitations comes into play as to actions against that agency and its employees. The Act requires that notice of a claim be given to a public entity before an action can be brought against it. . . . It also provides for a special six-month, or sometimes two-year, statute of limitations. *See* Cal. Gov't Code § 945.6(a). [Plaintiff's] attempt to use these provisions to carve out an exception to the one-year statute and thereby resuscitate his fading claim is futile.

"In general, state notice of claim statutes have no applicability to § 1983 actions. . . . That, as we have said, includes their special statutes of limitations. . . .

". . . The [statutory] section[, 945.6, which requires suit within six months,] . . . is simply a separate freestanding special statute of limitations which applies when claims are presented to public agencies. Once a claim is presented, the section is the only statute of limitations which applies to that claim. It no more tolls the general residual tort statute of limitations than do other wholly separate statutes of limitations. It, like other statutes of limitations, applies and controls cases in a particular area. It is not a general statute of limitations at all. More accurate is *Emmert v. County of Sonoma*, 836 F.Supp. 715, 716-17 (N.D.Cal.1993). *That case properly determined that § 945.6 did not apply to § 1983 claims* . . . ." (*Silva, supra,* 169 F.3d at pp. 610-611, citations & fn. omitted, italics added.)

Javor relies on *Halus v. San Diego County Assessment Appeals Bd.* (S.D.Cal. 1992) 789 F.Supp. 327. In that case, the plaintiff filed her federal civil rights claim more than one year after the date of injury but within six

months after her claim was denied under the California Government Claims Act. The court held that the defendant was estopped to invoke the one-year limitations period and was bound by the six-month period contained in the notice denying the plaintiff's claim under the state claims act. Thus, the court found that the claim was timely filed.

We conclude that, in *Silva, supra*, 169 F.3d 608, the Ninth Circuit overruled *Halus* sub silentio. We find the analysis in *Silva* to be persuasive. It follows that Javor's section 1983 claim—which was filed more than one year after the WCAB concluded that his right to due process had been violated—is barred by California's one-year statute of limitations applicable to personal injury claims.

## B. *State Law Claims (Third Amended Complaint)*

When the trial court sustained the demurrer without leave to amend as to the section 1983 claim, it ruled that Javor could allege any new theories of recovery in a third amended complaint. Javor did so, alleging four causes of action against Taggart, Johnson, and Aubrey: (1) violation of the state Constitution; (2) slander and clouding of title; (3) intentional infliction of emotional distress; and (4) negligence.

Defendants demurred to the third amended complaint on several grounds. The trial court sustained the demurrer without leave to amend and dismissed the action.

### 1. *Violation of the State Constitution*

Javor alleged that defendants had violated his rights to due process and equal protection of the laws, as guaranteed by the state Constitution (Cal. Const., art. I, § 7). As a remedy, he sought damages.

It is beyond question that a plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause of the state Constitution. (*Carlsbad Aquafarm, Inc. v. State Dept. of Health Services* (2000) 83 Cal.App.4th 809, 815-823 [100 Cal.Rptr.2d 87] [due process]; *Gates v. Superior Court* (1995) 32 Cal.App.4th 481, 516-524 [38 Cal.Rptr.2d 489] [equal protection].) The courts in *Carlsbad* and *Gates* thoroughly discussed this issue, and we see no need to repeat or summarize their extensive scholarly analysis.

### 2. *Governmental Immunity*

The trial court found that the other causes of action in the third amended complaint—slander and clouding of title, intentional infliction of emotional distress, and negligence—were barred by governmental immunity.

As provided in Government Code section 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." (Hereafter section 821.6.)

"Section 821.6 covers the initiation or prosecution of judicial or administrative proceedings where the target may or may not be a state employee. The policy behind section 821.6 is to encourage fearless performance of official duties. . . . State officers and employees are encouraged to investigate and prosecute matters within their purview without fear of reprisal from the person or entity harmed thereby. Protection is provided even when official action is taken maliciously and without probable cause." (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1424 [4 Cal.Rptr.2d 203].)

Section 821.6 is not limited to conduct occurring during formal proceedings. "[I]t also extends to actions taken in preparation for formal proceedings. Because investigation is 'an essential step' toward the institution of formal proceedings, it 'is also cloaked with immunity.'" (*Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209-1210 [34 Cal.Rptr.2d 319].)

"The plain language of section 821.6 and its legislative history demonstrate the Legislature intended this section to protect public employees from liability for malicious prosecution when they have acted within the scope of their employment. . . . The immunity conferred by section 821.6 is not limited to peace officers and prosecutors but has been extended to public school officials . . . , heads of administrative departments . . . , social workers . . . , county coroners . . . , and members of county boards of supervisors . . . ." (*Tur v. City of Los Angeles* (1996) 51 Cal.App.4th 897, 901 [59 Cal.Rptr.2d 470], citations omitted.)

"[C]ourts have . . . recognized [that] section 821.6 is not limited to only malicious prosecution actions. In *Citizens Capital Corp. v. Spohn* (1982) 133 Cal.App.3d 887 [184 Cal.Rptr. 269], the court determined section 821.6 provided immunity to government officials who published charges of improper collection methods against plaintiff. In *Kayfetz v. State of California* (1984) 156 Cal.App.3d 491 [203 Cal.Rptr. 33], the state was sued for publishing a disciplinary action against plaintiff. The court acknowledged the 'publication was authorized as part of the statutory scheme and was clearly "within the scope of [defendant's] employment," within the meaning of section 821.6.'. . . '[S]ection 821.6 is not limited to suits for damages for malicious prosecution, although that is a principal use of the statute. . . .'"

(*Jenkins v. County of Orange* (1989) 212 Cal.App.3d 278, 283 [260 Cal.Rptr. 645].)

In discussing section 821.6 in the context of criminal prosecution, one Court of Appeal has stated: "[O]ur system of law enforcement depends upon 'the investigation of crime and the accusation of offenders by properly trained officers.'. . . The impartiality of that system requires that, when exercising that responsibility, the officers are ' "free to act in the exercise of honest judgment uninfluenced by fear of consequences personal to themselves." '. . . To eliminate that fear of litigation and to prevent the officers from being harassed in the performance of their duties, law enforcement officers are granted immunity from civil liability, even for the malicious abuse of their power. . . . ' "[I]n the end [it is] better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." ' " (*Amylou R. v. County of Riverside*, *supra*, 28 Cal.App.4th at p. 1213, citations omitted.)

 In the present case, the importance of granting immunity under section 821.6 cannot be overstated. Defendants work within the administrative system established to implement the objectives of the Workers' Compensation Act. They are charged with seeking reimbursement from illegally uninsured employers after the state pays benefits to an injured employee. Their decisions are made in the course of investigations and also through formal administrative proceedings. In defendants' search for scofflaws, they must be able to "investigate and prosecute matters within their purview without fear of reprisal from the person or entity harmed thereby." (*Shoemaker v. Myers*, *supra*, 2 Cal.App.4th at p. 1424.) Even though defendants may, on occasion, misidentify the responsible employer, it is " ' "better to leave unredressed [such] wrongs . . . than to subject [defendants] to the constant dread of retaliation." ' " (*Amylou R. v. County of Riverside*, *supra*, 28 Cal.App.4th at p. 1213.)

Finally, we note that immunity under section 821.6 applies only where public employees have acted—in the words of the statute—"within the scope of their employment." That requirement is satisfied in this case. Javor alleges, in essence, that defendants made mistakes in performing the duties imposed upon them by state law.

The third amended complaint expressly relied on Labor Code section 3715, subdivision (c), which provides: "In any [workers' compensation] claim in which it is alleged that the employer has failed to secure the payment of compensation, the director [of the department of industrial

relations] . . . shall determine, on the basis of the evidence available to him or her, whether the employer was prima facie illegally uninsured. A finding that the employer was prima facie illegally uninsured shall be made when the director determines that there is sufficient evidence to constitute a prima facie case that the employer employed an employee on the date of the alleged injury and had failed to secure the payment of compensation, and that the employee was injured arising out of, and occurring in the course of, the employment. . . ."

The amended complaint also emphasized the pertinent regulations, which state: "Upon receipt of written protest or application for reconsideration from an aggrieved person, of a determination that an employer was prima facie illegally uninsured, the Chief of the Claims Bureau, Uninsured Employers Fund, on the director's behalf, shall informally reconsider the determination. The aggrieved person shall furnish a statement of reasons why the determination was in error, and any evidence in support of the position of the aggrieved person. The Chief of the Claims Bureau may uphold, rescind, or alter the original determination. The decision after reconsideration shall be mailed to the aggrieved person . . . within five working days after receipt of the protest or application for reconsideration." (Cal. Code Regs., tit. 8, § 15722.)

Javor alleges that defendants erred, first, by making a prima facie determination that he was Gonzales's employer and, second, by not reconsidering and rescinding that determination after he submitted objections and supporting evidence. Those allegations recognize that defendants were involved in the kinds of decisions required by law and that they were therefore acting within the scope of their employment, albeit under a mistaken belief.

Javor's allegation in the third amended complaint that defendants acted "outside" or "beyond the course and scope of [their] authority" does not require a different result. For one thing, a *conclusory* allegation in a complaint that an employee was acting "outside the scope of employment" is to be disregarded when the *factual* allegations and inferences indicate otherwise. (See *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 722-724 [34 Cal.Rptr.2d 898, 882 P.2d 894].) Here, they do. In addition, Javor alleged in the original complaint that Taggart "acted within the course and scope of his authority." Having made that allegation early on, Javor cannot contradict it now. (See *Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 383-384 [243 Cal.Rptr. 627].)

In sum, the trial court properly sustained the demurrer to the third amended complaint without leave to amend.

## III

### Disposition

The order of dismissal is affirmed.

Spencer, P. J., and Ortega, J., concurred.

On May 23, 2002, the opinion was modified to read as printed above.