*189 Reversed by published opinion. Judge LUTTIG wrote the opinion, in which Judge WIDENER joined. Judge KING wrote an opinion concurring in part and dissenting in part.
LUTTIG, Circuit Judge.
Appellee-noteholders filed a class action suit against the principal lender of the now-bankrupt company that issued the notes. The district court certified the class action. However, there is a currently pending bankruptcy adversary proceeding dealing with most of the same questions at issue in the class action. We reverse the class certification because, in light of the adversary proceeding, the class action is not the superior method for the fair and efficient adjudication of the controversy.
I.
From 2000 to 2003, The Thaxton Group, Inc. (TGI), sold notes to appellees. J.A. 191-95. The notes, which TGI sold in a series of person-to-person transactions, id. at 448-647, were offered under at least eight separate registration statements that TGI filed with the Securities Exchange Commission, id. at 2130-62. The appellee-noteholders allege that TGI sold these notes in order to repay a portion of the debt TGI owed to appellant, Finova Capital Corp., which was TGI’s principal lender. See id. at 204. TGI filed for Chapter 11 bankruptcy on October 17, 2003. See In re The Thaxton Group, Inc., No. 03-13183 (Bankr.D. Del. filed Oct. 17, 2003).
Shortly after TGI’s bankruptcy filing, appellees filed this class action against Fi-nova and TGI’s lawyers and accountants.[1] The class action complaint alleges that TGI misrepresented financial data in the notes’ registration statements in violation of section 11 of the Securities Act of 1933, 15 U.S.C. § 771, and that Finova is jointly and severally liable for the misrepresentations under section 15 of the Securities Act, 15 U.S.C. § 77o, because Finova was “an active partner and counselor to” TGI, took “a leading role in most of [TGI’s] major business decisions,” and was “fully aware of the note sale program designed to transfer the risky portion of the Finova debt to the unsuspecting noteholders,” J.A. 229-32. The class action complaint also asserts that Finova was a participant in a civil conspiracy, under South Carolina law, to sell “worthless securities to the plaintiffs with the purpose of transferring the money to Finova.” Id. at 250.
Several months after the appellees filed their class action, the committee of TGI’s unsecured creditors commenced an adversary proceeding against Finova in the Delaware bankruptcy court where TGI’s bankruptcy was pending.[2] The unsecured creditors sought to have Finova’s secured claims either disallowed or equitably subordinated to the noteholders’ unsecured claims. The Official Cmte. of Unsecured Creditors of The Thaxton Group, Inc. v. Finova Capital Corp. (In re The Thaxton Group, Inc.), No. 04-53129 (Bankr.D. Del. filed Mar. 24, 2004). The adversary com *190 plaint alleges that Finova violated banking laws and regulations, securities laws and regulations, and fiduciary duties owed to TGI. J.A. 70-170. It includes allegations of the same securities law violations alleged in appellees’ class action — that is, controlling-person liability under section 15 for TGI’s section 11 violations. Id. at 150-51. While the adversary complaint does not contain any allegation of a South Carolina civil conspiracy, the substance of the civil conspiracy claim is alleged repeatedly, as many of the complaint’s allegations depend upon the existence of a scheme to sell worthless securities to the noteholders in order to allow TGI to repay money owed to Finova. See, e.g., 155-58.
The district court acted on the appellees’ class action complaint by certifying the class action and designating three subclasses, only two of which included plaintiffs pursuing claims against Finova. The first subclass comprises TGI noteholders who “purchased notes during the three-year period prior to October 16, 2003 and who held these notes as of the date that Thaxton discontinued the note program on September 29, 2003” and who are pursuing section 15 claims against Finova for TGI’s section 11 violations. Id. at 2253-54. The second subclass comprises TGI notehold-ers who “held notes purchased from Thax-ton as of September 29, 2003 when Thax-ton discontinued its note program” and who are pursuing civil conspiracy claims against Finova. Id. at 2254. In certifying the class action, the district court found that the action satisfied all of the requirements of Federal Rule of Civil Procedure 23. Id. at 2254-61. Specifically, it found that “a class action is the superior method available for the fair and efficient adjudication of Plaintiffs’ claims.” Id. at 2260.
Pursuant to Federal Rule of Civil Procedure 23(f), Finova filed a petition in this court for permission to appeal the district court’s class certification. We granted Fi-nova’s petition for permission to appeal, stayed the class action proceedings pending in the district court, and now reverse the district court’s class certification.
II.
We review the district court’s certification decision for abuse of discretion. McClain v. South Carolina Nat. Bank, Í05 F.3d 898, 902 (4th Cir.1997). Though, in order to be affirmed, the district court must exercise its discretion “within the framework of Rule 23.” Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir.2001). In addition to satisfying the numerosity, commonality, typicality, and representativeness requirements of Federal Rule of Civil Procedure Rule 23(a), actions certified under Rule 23(b)(3) must satisfy the pre-dominance and superiority requirements. Id. The party seeking class certification bears the burden of proof on these elements. Id. We address only Rule 23(b)(3)’s superiority requirement, which requires that the district court find that “a class action is superior to other available methods for the fair and efficient adjudication of the controversy.”[3] Rule 23(b)(3)(B) deems “the extent and nature of any litigation concerning the controversy already commenced by or against members of the class!’ a pertinent consid *191 eration in deciding whether the class action is superior.
The district court concluded that the class action was superior to other available methods for the fair and efficient adjudication of this controversy by comparing the class action to thousands of individual suits, without even mentioning the adversary proceeding in its analysis.[4] See J.A. 2260-61 (“One class action, with subclasses, remains unquestionably superi- or to thousands of separate trials that might lead to disparate results.”). It was an abuse of discretion for the district court to find the class action superior without analyzing whether it was superior to the adversary proceeding — the only other pending, collective proceeding having to do with the same controversy as the class action. By failing to analyze whether the class action was superior to the adversary proceeding, the district court did not consider “the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,” as Rule 23(b)(3)(B) advises.
When the class action is compared to the adversary proceeding, it is clear that the former is not superior to the latter. The bankruptcy court must decide the matters raised in the adversary proceeding in order to determine the validity and priority of TGI’s creditors’ claims. It would be inefficient and needlessly duplicative to allow the class action to go forward when the adversary proceeding will likely adjudicate this controversy in the normal course of TGI’s bankruptcy.[5] The adversary proceeding presents no danger of unfairness due to disparate results because it, like the class action, will yield a single result for all of the noteholders. Also, the adversary proceeding will avoid many of the expenses and complexities associated with having the class action and the adversary proceeding pending simultaneously (such as those presented in the case before us today). For these reasons, the class action cannot be considered the superior method for the fair and efficient adjudication of the controversy.
Appellees contend that the class action is superior to the adversary proceeding because “the adversary proceeding seeks relief that is different from the relief in this action.” Appellee’s Br. at 59. Specifically, appellees point to their claim for *192 punitive damages and the potential availability of pre- and post-judgment interest in the class action. However, this disparity in the relief requested does not overcome the considerations that lead us to conclude that the class action is not the superior method for fairly and efficiently adjudicating the controversy.[6] Our conclusion is reinforced by the fact that the class action plaintiffs have acknowledged that, if successful in the adversary proceeding, they could be made “more or less whole.” J.A. 360. The fact that the relief sought in the two actions differs slightly is not enough to persuade us that the class action is superior.
CONCLUSION
The judgment of the district court is reversed and the case is remanded.

REVERSED.

. The lawyers and accountants do not appeal the class certification.

. The Delaware bankruptcy court set a bar date of February 27, 2004, for filing proofs of claim. Finova is TGI's sole secured creditor, holding approximately $110 million in debt secured by a lien on most of TGI's assets. TGI has approximately $120 million in unsecured debt, which includes the debt held by the noteholders who are the plaintiffs in this class action. There are no unsecured priority creditors, and all of TGI’s employees were paid after TGI’s bankruptcy filing. At oral argument counsel for Finova represented that there was approximately $160 million in TGI’s bankruptcy estate. That representation was not disputed by the plaintiffs' counsel.

. A necessary condition to certification under Rule 23(b)(3) is the class action’s superiority to all other methods for the fair and efficient adjudication of the controversy. Thus, a class cannot be certified under Rule 23(b)(3) if there is a method to which the class action is not superior. ' As long as the class action is not superior to one method, it makes no difference whatsoever that the class action is superior to other methods. In this case, even if it were true that the class action would be superior to individual actions, the class cannot be certified if it is not superior to the adversary proceeding..

. There is no question that the district court knew of the existence of the adversary proceeding when it certified the class action. The adversary proceeding was filed more than a year before the class action was certified, and the submissions made to the district court arguing for class certification discussed the pending adversary proceeding. See J.A. 360.

. The dissent characterizes the adversary proceeding as concerning "only whether Finova must wait behind the noteholders in line for TGI’s assets,” post at 194, and distinguishes it from the class action, which it characterizes as presenting the issue of Finova’s direct liability to the noteholders, id. However, the two proceedings are not as distinct as the dissent makes them seem. The conduct that could cause the court to put Finova behind the noteholders in line for TGI’s assets in the adversary proceeding includes the same conduct that could give rise to Finova’s direct liability to the noteholders. Specifically, a finding that Finova is liable as a controlling person for TGI's securities law violations or that Finova participated in a civil conspiracy to sell worthless securities would likely be sufficient to put Finova behind the notehold-ers in the line for TGI’s assets. Those findings are precisely the findings that the note-holders seek in this class action.
Furthermore, if the noteholders are made "more or less whole” by success in the adversary proceeding, which success would result in payment from TGI’s assets ahead of Fino-va, Finova’s direct liability to the noteholders will be "more or less” extinguished. See 15 U.S.C. § 77o (making controlling persons liable “jointly and severally with and to the same extent” as controlled persons).

. It is not clear that the disparity in the relief requested is the result of any structural impediment to asserting a claim for punitive damages or pre- and post-judgment interest in the bankruptcy adversary proceeding. There does not appear to be any bar to bringing the claim for punitive damages in the adversary proceeding. Indeed, the adversary complaint currently requests punitive damages on at least one claim. J.A. 169. And, the availability of pre- and post-judgment interest in the bankruptcy proceeding appears to be an open question the decision of which depends upon the characterization of the claims that succeed in the adversary proceeding.