Eric ROWDEN and Gerald Martin, Individually, and on behalf of all others similarly situated, Plaintiffs,

v.

PACIFIC PARKING SYSTEMS, INC. and the City of Laguna Beach, Defendants.

No. SACV 11–01190–CJC(ANx).

United States District Court,
C.D. California,
Southern Division.

July 2, 2012.

582

Ron E. Frank, F & L Law Group PC, Katy, TX, Gregory N. Karasik, Karasik Law Firm, Brian W. Lee, Lee and Shoemaker LLP, Los Angeles, CA, for Plaintiff.

Philip D. Kohn, Alisha A. Patterson, Karen Elizabeth Walter, Rutan and Tucker LLP, Costa Mesa, CA, John Scott Russo, Russo and Duckworth LLP, Irvine, CA, for Defendants.

### ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

CORMAC J. CARNEY, District Judge.

## I. INTRODUCTION

Plaintiffs Eric Rowden and Gerald Martin (together, "Mr. Martin") assert claims on behalf of themselves, and all others similarly

situated, against Defendants Pacific Parking Systems, Inc. and the City of Laguna Beach (collectively, "Laguna Beach") for violations of the Fair and Accurate Credit Transactions Act ("FACTA"), a statute enacted by Congress to reduce identity theft and credit card fraud. In relevant part, FACTA makes it illegal to print on a credit or debit card receipt more than the last five digits of the card number or the expiration date. 15 U.S.C. § 1681c(g). Mr. Martin alleges that Laguna Beach violated this provision by printing parking receipts containing the expiration date of his credit cards. Mr. Martin now seeks to represent a class of over 100,-000 purchasers of parking at Laguna Beach parking lots who received similar receipts since June 2008, but who have not suffered any actual harm or have been the victim of identity theft. Before the Court is Mr. Martin's motion for class certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Because a class action is not superior to other methods for fairly and efficiently adjudicating the parties' controversy, Mr. Martin's motion is DENIED.

## II. FACTUAL BACKGROUND

In 2003, Congress passed FACTA to require merchants [1] to hide all but the last five digits of the account number and entire expiration date of their customers' credit or debit cards. Pub.L. 108–159, 117 Stat. 1952, codified at 15 USC § 1681c(g). Congress' purpose in passing FACTA was "to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud." Pub.L. No. 110–241, § 2, 122 Stat. 1565 (June 3, 2008). Congress created civil liability of $100 to $1,000 for the willful noncompliance of FACTA. 15 USC § 1681n(a)(1)(A). For the negligent violation of FACTA, recovery is limited to actual damages. 15 USC § 1681*o*(a). Importantly, Congress made attorney's fees, costs, and punitive damages available for the willful violation of FACTA. 15 USC § 1681n.

"Almost immediately after the deadline for compliance [with FACTA] passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act [2] even where the account number was properly truncated." PL 110–241, 2008 HR 4008, sec. 2(a)(4). Following this torrent of litigation in which no harm to any consumers' identities was alleged, Congress passed the Credit and Debit Card Receipt Clarification Act of 2007 (the "Clarification Act"). The purpose of the Clarification Act was to limit "abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." *Id.* at sec. 2(b). The Clarification Act notes that FACTA was enacted to protect against identity theft, and that "[e]xperts in the field agree that proper truncation of the card number ... *regardless of the inclusion of the expiration date*" prevents identity theft or credit card fraud. *Id.* at sec. 2(a)(6) (emphasis added).

This case does not involve the victims of identity theft. Nor does it involve the printing of the last five digits of consumers' credit card numbers on parking receipts. This case only involves the alleged failure by Laguna Beach to truncate the expiration dates of consumers' credit cards on parking receipts. Mr. Martin does not allege that he, or any other member of the proposed class, suffered actual damages as a result of Laguna Beach's alleged FACTA violations. Mr. Martin's proposed class definition includes:

> All individuals in the United States of America who, from June 4, 2008 through the date of class certification [the "Class Period"], were provided at the point of sale or transaction with an electronically-printed receipt by Defendants on which they printed the expiration date of the person's credit or debit Card. Excluded from the class is any individual who has suffered identity theft as a result of Defendants'

---

1. The parties did not raise the issue of whether Laguna Beach qualifies as a "merchant" within the meaning of FACTA. In light of the Court's denial of the motion for class certification, the Court need not and does not address the issue.

2. FACTA was passed as an amendment to the already existing Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

violations of FACTA as delineated in this Complaint.

(First Amended Complaint ("FAC") ¶ 61.)

Mr. Martin alleges that beginning on June 4, 2008, and extending to the present, Laguna Beach willfully violated FACTA by allowing seven parking machines, located at seven of its parking lots, to print receipts containing the expiration date of the credit and debit cards of consumers. (FAC ¶¶ 61, 67; Pl.'s Mem. in Supp. of Mot. for Class Cert. ["Pl.'s Mem."], at 1, 5.) Mr. Martin estimates that during the proposed class period over 100,-000 consumers were victim to Laguna Beach's FACTA violations. (Id. at 5.)

This lawsuit was not of Mr. Martin's own design and initiation. In fact, Mr. Martin had no prior knowledge and experience regarding FACTA. Rather, it was his attorney, Ron E. Frank, who discovered the alleged violation of Laguna Beach's parking machines. In early February 2011, Mr. Frank was vacationing in Laguna Beach, and after paying for parking, noticed that his receipt did not comply with FACTA. (Dkt. No. 92–2 [Frank Rebuttal Decl. ¶¶ 3, 5].) Mr. Frank was familiar with FACTA's requirements as he had been prosecuting a FACTA class action in Texas. (Id. ¶ 4.) Four months later, Mr. Frank returned to Laguna Beach and discovered that the parking machines were still printing receipts in violation of FACTA. (Id. ¶ 6.) Mr. Frank then sent a letter to Laguna Beach to "give the City and [sic] opportunity to fix the problem and . . . to have evidence about how the City responds to an *average* consumer when asked to correct problems." (Id.; Pl.'s Reply, at 21.) (emphasis added.) When Mr. Frank failed to receive an immediate response from Laguna Beach, he began to solicit a class representative by placing flyers on windshields. (Frank Rebuttal Decl. ¶ 9.) Soon thereafter, however, in August of 2011, Scott Leetch, the maintenance supervisor for Laguna Beach's parking facilities, was informed that some of the city's parking machines were erroneously printing credit card expiration dates. (Leetch Decl. ¶ 18.) Upon learning this, Mr. Leetch immediately contacted Pacific Parking to investigate and reprogram any machines as necessary. (Id.)

Concurrently with these events in August 2011, Mr. Martin was working on a construction job site located adjacent to a Laguna Beach parking lot. (Dkt. No. 36–3 [Martin Decl. ¶ 2]; Dkt. No. 92–1 [Martin Rebuttal Decl. ¶ 3]; Pl.'s Reply, at 13.) Mr. Martin used his credit card to purchase parking from this lot three times on August 4, 8, and 9. (Martin Rebuttal Decl. ¶¶ 8–10.) On August 9, 2011, Mr. Martin responded to one of Mr. Frank's flyers regarding this action. (Id. ¶ 11.) On August 10, 2011, the original complaint in this case was filed, (Dkt. No. 1.), and on August 11, Mr. Martin purchased yet more parking at the same lot. (Id. ¶ 12.) Subsequently, Mr. Martin spoke with Plaintiffs' counsel and sent counsel his parking receipts. (Id. ¶ 13.) Finally, on October 17, 2011, the FAC was filed with Mr. Martin named as a co-plaintiff. (Dkt. No. 7.)

Laguna Beach does not dispute that its parking machines printed receipts which included customers' credit or debit card expiration dates. (See, e.g., Leetch Decl. ¶¶ 18, 20, 23) Rather, Laguna Beach contends that a class action is not the superior method of resolving this dispute. The Court agrees.

## III. DISCUSSION

### A. Superiority Requirement under Rule 23(b)

▆▆▆ To certify a class action under Rule 23(b)(3), the class representatives must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3); *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1234–35 (9th Cir. 1996).[3] Rule 23(b)(3) includes both a "predominance" and "superiority" component. In evaluating superiority, the court must consider the likely difficulties in managing the case,

---

**3.** The class representatives also must satisfy the threshold requirements of Rule 23(a). Because Mr. Martin cannot show that the proposed class is appropriate under Rule 23(b)(3), the Court declines to reach the issue of whether Mr. Martin has satisfied those threshold requirements.

specifically "the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 164, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). One such manageability concern is a court's ability to clearly define and ascertain the contours of the proposed class. *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 679–80 (S.D.Cal.1999) ("Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.") The superiority of a class action also depends on the existence of a realistic alternative to class litigation. *Valentino,* 97 F.3d at 1234–35 ("A class action is the superior method for managing litigation if no realistic alternative exists.") Ultimately, however, the decision to certify a class is left to the discretion of the court. *See Desai v. Deutsche Bank Secs. Ltd.,* 573 F.3d 931, 937 (9th Cir.2009).

### B. Mr. Martin's Proposed Class Is Not Ascertainable

▇▇ To determine whether a class action is the superior method of adjudicating the dispute, a court must consider the likely difficulties in managing the proposed class action. Fed.R.Civ.P. 23(b)(3)(D); *see Zinser v. Accufix Research Inst.,* 253 F.3d 1180, 1189 (9th Cir.2001). A class action is not manageable if membership of the class cannot be sufficiently well-defined at the outset. *See* William Schwarzer, A. Wallace Tashima, & James Wagstaffe, *Federal Civil Procedure Before Trial* § 10:432 (2006). A well-defined class must be not only precise, but also objective and presently ascertainable. *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D.Cal.1998) (quotes omitted.) A serious, and perhaps insurmountable, manageability problem arises if each member has to litigate separate issues to establish his or her right to recover individually. *See Zinser,* 253 F.3d at 1192 ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recovery individually a class action is not 'superior'.")

▇▇ Here, the necessary individual inquiries for each member of the proposed class impair the Court's ability to effectively and efficiently manage the litigation. A violation of FACTA is limited to consumers. The Fair Credit Reporting Act, which provides the right to sue for a violation of FACTA, states that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any *consumer* is liable to that *consumer....*" 15 U.S.C. § 1681n (emphasis added); *see also Pezl v. Amore Mio, Inc.,* 259 F.R.D. 344, 347 (N.D.Ill.2009) ("FACTA does not contain a separate provision establishing a private cause of action; the right to sue is granted under the FCRA.") For purposes of FACTA, a "consumer" means an "individual." 15 U.S.C. § 1681a(c). Therefore, relief for a violation of FACTA is only available to individual consumers, and not business customers. *See Friedman–Katz v. Lindt & Sprungli (USA), Inc.,* 270 F.R.D. 150, 156 (S.D.N.Y.2010) ("[A]ny right to sue under [FACTA] is limited to 'consumers.'") (citing *Follman v. Vill. Squire, Inc.,* 542 F.Supp.2d 816, 819 (N.D.Ill.2007)); *Hammer v. JP's S.W. Foods, L.L.C.,* 739 F.Supp.2d 1155, 1163–64 (W.D.Mo.2010); *Pezl,* 259 F.R.D. at 347–48. It follows that for a class action under FACTA to proceed, every member of the class must have used a personal credit or debit card, rather than a business or corporate card. *Pezl,* 259 F.R.D. at 347–48 ("Section 1681n provides a private right of action for *consumer* cardholders to enforce FACTA's requirements ... only consumer cardholders have a private right of action under FACTA."). Because liability under FACTA turns on this distinction, an individual, fact-specific inquiry is necessary to determine whether every member of the proposed class is properly considered a consumer. Such individual, fact-specific inquiries would be a daunting task here.

▇▇ Mr. Martin's proposed class consists of well over 100,000 individuals who purchased parking from Laguna Beach over the last five years. (Pl.'s Mem. at 7; Pl.'s Not. of Mot., at 2.) Each of these 100,000 individuals would be required to present proof of their "consumer" purchase, and each method

of proof will need to be examined.[4] Undoubtedly, every single class member will have to testify to prove his or her consumer status.[5] Even those few who retained their receipts dating back five years will have to testify since those receipts do not disclose consumer status. Needless to say, tens of thousands of speculative testimonials about parking transactions occurring five years ago would be incredibly time consuming and, quite frankly, a tragic waste of scarce judicial resources. A class action is certainly not an efficient method for resolving this controversy.

## C. Effective Alternative Remedies Are Available

The superiority requirement of Rule 23(b)(3) requires that the proposed class action be superior to other alternative methods of resolving the dispute. *Gregory v. Finova Capital Corp.*, 442 F.3d 188, 191 n. 3 (4th Cir.2006) ("A necessary condition to certification under Rule 23(b)(3) is the class action's superiority to all other methods for the fair and efficient adjudication of the controversy.") A class cannot be certified under Rule 23(b)(3) if there is a method that is superior to a class action. *Valentino*, 97 F.3d at 1234–35 ("A class action is the superior method for managing litigation if no realistic alternative exists.") In this case, there are two reasonable alternatives to a class action: individual litigation as provided for by FACTA and an administrative claim under the California Government Claims Act ("CGCA").

FACTA provides a specific, individual remedy for aggrieved parties in that it allows any person who is the victim of a statutory violation to recover between $100 and $1000. *See* 15 U.S.C. § 1681n. Out of concern that a small statutory award might dissuade potential challenges to a FACTA violation, Congress took the significant step of making attorney's fees, costs, and punitive damages available to individual litigants. *See* 15 U.S.C. § 1681n(a)(2), (3). These remedies give individuals truly harmed by a FACTA violation a more than sufficient incentive to bring an action even if the amount of recovery is difficult to quantify or relatively small.[6]

An aggrieved consumer can also seek recovery through the administrative remedy available in the CGCA. *See Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 211 (9th Cir.1975) (finding it "consistent with [Rule 23's] purpose to determine whether any administrative methods of settling the dispute exist.") In California, plaintiffs may seek relief for claims against a municipality through the CGCA. Cal. Gov.Code § 810, *et seq.* The primary purpose of the CGCA is "to provide the [accused] public entity [with] sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. . . ." *Javor v. Taggart*, 98 Cal.App.4th 795, 804, 120 Cal.Rptr.2d 174 (2002); *City of Stockton v. Super. Ct.*, 42 Cal.4th 730, 744, 68 Cal.Rptr.3d 295, 171 P.3d 20 (2007). Claims brought under the CGCA are presented for action within 45 days. Cal. Gov.Code § 911.6(a).

---

4. While Mr. Martin correctly notes that whether members of the proposed class are properly considered "consumers" under FACTA is a merit issue, the Court believes that a limited inquiry into the merits is necessary to determine whether the class is ascertainable, and therefore, whether the claims are appropriate for class litigation. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992); *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir.2009) ("Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.")

5. With regard to the parking lots in question located nearby banks, offices, and other busi-

nesses, it is more than likely that many of the class members used Laguna Beach's parking lots for business purposes. Indeed, even Mr. Martin himself purchased tickets with both his personal and business credit cards. (Leetch Decl., Exh. 14; Supp. Leetch Decl., Exh. 46.)

6. Individual litigation also has the advantage of permitting further cost reduction through consolidated case management. Should a number of separate suits be filed under section 1681n, all or some of those cases could be assigned to the Court pursuant to Federal Rule of Civil Procedure 42. Consolidation in this manner would eliminate the need for duplicative discovery and would reduce the cost of litigation.

Simply put, either individual litigation or administrative proceedings is a far superior method available to adjudicate this controversy. In FACTA, Congress created a litigant friendly apparatus for addressing an alleged violation on an individual basis. At the state level, California has a viable administrative claims process capable of expeditiously processing Mr. Martin's claims. With these two alternative methods of resolving the dispute available, it is simply not credible to argue that a class action is the "superior" method.[7]

### D. Proceeding as Class Action Would be Unfair

Certain types of cases are ideal for class certification. For example, a securities fraud case where the claims of every tendering shareholder turn on identical facts and law regardless of identity or circumstance, *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir.1995), *rev'd on other grounds in Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); a wage-and-hour dispute over whether an employer failed to pay its employees the prevailing wage, *Ramos v. SimplexGrinnell LP*, 796 F.Supp.2d 346, 359 (E.D.N.Y.2011) (noting numerous courts have found wage claims are perhaps "the most perfect questions for class treatment"); or an oil spill that caused widespread environmental damage, *see Eyak Native Village v. Exxon Corp.*, 25 F.3d 773 (9th Cir.1994). Each of these cases included classes with common questions, where litigants were actually harmed by egregious conduct. Class litigation was not only the most effective means of resolving these disputes, it was also the fairest. This is not the case here.

Mr. Martin seeks $15 million from a small municipality for its alleged FACTA violations. (Pl.'s Mem., at 19.) Nobody in Mr. Martin's proposed class, however, has ever experienced any of the harm for which FACTA was enacted to protect against. Moreover, after learning of the possible FACTA violations, Laguna Beach eventually took corrective measures. There is no evidence to suggest that Laguna Beach acted maliciously or in bad faith. Nevertheless, Mr. Martin demands that Laguna Beach defend itself in a time-consuming and expensive class action. But to do so could severely limit Laguna Beach's ability to protect the health, safety, and welfare of the city.[8]

Laguna Beach does not have unlimited resources to participate in contentious class discovery, extensive law and motion, and a prolonged trial. Nor does Laguna Beach have the financial wherewithal to satisfy and survive an adverse $15 million judgment. Indeed, $15 million is twice the balance of Laguna Beach's general fund reserves and more than this year's entire budget for the city's police department. (Pietig Decl. ¶ 40.) Satisfying a $15 million judgment will compromise Laguna Beach's ability to respond to emergencies and provide necessary public services. (Def.'s Opp'n, at 25; Pietig Decl. ¶¶ 37–43.) In particular, the areas affected will include payment of workers' compensation and employee medical insurance claims, response to natural disasters, and the provision of vital municipal services. (Pietig Decl. ¶¶ 39(a), 39(b), 42.) The Court is at a loss to understand how Mr. Martin can seriously suggest that it is "fair" to subject Laguna Beach to such burdensome class litigation and expose the city to such ruinous liability.[9]

---

**7.** Because of the specific, individual remedy available to individuals in FACTA, a class action would also be contrary to Congressional intent. *Ratner v. Chem. Bank N.Y. Trust Co.*, 54 F.R.D. 412, 414 (S.D.N.Y.1972) (stating that class treatment is inconsistent with Congressional intent when Congress has prescribed a means of private statutory enforcement).

**8.** The Court is only aware of one other FACTA decision in the public context, *Medrano v. Modern Parking, Inc., et al.*, No. CV 07–2949 (C.D.Cal. Sept. 17, 2007). Similar to this holding, the court found several reasons why a class

action was not the superior method of adjudication, including, in particular, the size of the potential award, $12.5 to $125 million, which "would cripple the City of Pasadena's ability to provide public services...." *Id.* at 6.

**9.** Mr. Martin argues that the Ninth Circuit's recent decision in *Bateman* prohibits considering the magnitude of liability and proportionality to actual harm at the class certification stage. *Bateman v. Am. Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.2010). *Bateman*, however, is readily distinguishable from the present case. In *Bateman*, a class action was brought against a

## IV. CONCLUSION

For the foregoing reasons, Mr. Martin's motion for class certification is DENIED.

billion-dollar movie theater company for allegedly printing receipts displaying eight digits of consumers' credit card numbers in violation of FACTA. *Id.* at 711, 723. Here, in stark contrast, Mr. Martin seeks $15 million from a relatively small municipality for harmlessly printing the credit and debit card expiration dates on parking receipts. No one was harmed in this case and there has been no allegation that Laguna Beach's conduct was malicious or in bad faith. Moreover, a class action is unmanageable here, and there are two far superior methods for resolving this controversy: an individual action or an administrative proceeding.