Filed 4/27/22  Williams v. North Orange County Community College Dist. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KOURT D. WILLIAMS, | |
| Plaintiff and Appellant, | G059946 |
| v. | (Super. Ct. No. 30-2019-01053438) |
| NORTH ORANGE COUNTY COMMUNITY COLLEGE DISTRICT et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge.  Affirmed in part, reversed in part, and remanded with directions.

A. Marcus Hall & Associates and Alvin M. Hall for Plaintiff and Appellant.

Meyers Fozi & Dwork, Golnar J. Fozi and Daniel S. Modafferi for Defendants and Respondents.

\*        \*        \*

This appeal arises from a judgment entered in favor of defendants North Orange County Community College District (the District), and its employees (the individual defendants).  Plaintiff Kourt D. Williams alleged statutory and common law claims based on allegations of race and age discrimination arising from his employment application to the District.  After the trial court granted Williams leave to file his lawsuit, he filed it one day after a statute of limitations deadline lapsed for his statutory claims.

The District successfully filed demurrers and a motion for judgment on the pleadings.  The trial court concluded Williams's statutory claims were time-barred and declined to equitably toll the deadline that had lapsed.  The court also concluded Williams did not state facts sufficient to support his common law causes of action.

We review the trial court's rulings on Williams's common law claims de novo and conclude Williams has not shown error.  Notwithstanding, we review for abuse of discretion, the court's decision not to apply the doctrine of equitable tolling and cannot discern whether the court's decision on tolling was based on a mistaken view of the applicable law.  Accordingly, we conclude the court's ruling on the point sufficiently demonstrates that the court misunderstood the scope of its discretion.  We reverse and remand for further proceedings.

I

FACTUAL AND PROCEDURAL HISTORY

A. *The Employment Application*

In 2017, then 54-year-old Williams interviewed with a college, allegedly operated by the District, for a real estate instructor position.  He gave a mock teaching presentation and met with the individual defendants, allegedly all employees of the District and members of the college's hiring committee.

Williams alleges he interviewed well but was notified in April 2017 he was not selected for the position.  Allegedly, no one was ultimately hired.  Although he did

2

not suspect any unlawful discrimination when he was notified that he did not get the job, Williams alleges that 14 months later, in June 2018, a member of the college's hiring committee informed Williams he had not been chosen because of his race and age.

According to Williams, the informant told him that although Williams had scored among the top two candidates, the individual defendants "refused to submit . . . Williams' name to the President of the College," "even though [its] hiring policy and procedure mandated submission of the names of the top three interviewing candidates to the President for additional consideration and probable selection."

B. *Prelawsuit Conduct by Williams*

Within two weeks of receiving communication from the informant, Williams filed an administrative complaint with the Department of Fair Employment and Housing (DFEH) and, upon Williams's request, the DFEH issued him a June 29, 2018 right-to-sue notice that accurately stated Williams had one year from then to timely file a lawsuit for causes of action under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA).[1] Because the anniversary date fell on a Saturday, the last day for Williams to file FEHA claims in a lawsuit was effectively Monday July 1, 2019 (the FEHA lawsuit deadline). (Code Civ. Proc., §§ 10, 12a.)

Several weeks after the DFEH's right-to-sue notice, Williams presented a July 2018 claim for damages of injury to the District (the claim presentation), based on the Government Claims Act. (§ 810 et seq.; GCA.) Williams's claim alleged: "Although I was the top-ranked candidate, [two of the individual defendants in this case] refused to forward my name to the college president per District policy because of my race and age." The claim added: "Additional members of my [i]nterview selection and

_____

[1] All further statutory references are to the Government Code unless otherwise indicated.

3

recommendation committee included [the informant and the remaining individual defendants in this case]."

Four weeks after Williams presented his claim, the District wrote a September 11, 2018 response rejecting the claim as untimely (the claim rejection letter). The letter did not mention FEHA and stated:

"Because the claim was not presented within the time allowed by law, no action will be taken by the District on the claim you [presented]. At this time, your only recourse is to apply without delay to [the District] for *Leave to Present a Late Claim* [citations]. Under some circumstances, the *Leave to Present a Late Claim* could be granted (see [§] 911.6)." (See § 911.3 [failure to give sufficient warning regarding further available recourse for certain GCA claims waives public entity's time-bar defense].)

The above language shows the District responded to Williams's claim presentation based on four premises: (1) the GCA applied to Williams's allegations of unlawful conduct; (2) Williams's claim had accrued more than six months before it had been presented;[2] (3) the claim had therefore been untimely presented to the District; and (4) because the claim was untimely, Williams's only avenue of recourse was to comply with additional GCA procedures.[3] Relevant to this appeal, the GCA did not pose a

_____

[2]  Section 911.2, subdivision (a), establishes time limits of six-month and one-year for claims against public entities, triggered by claim accrual. First, "[a] claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) not later than six months after the accrual of the cause of action. [Second, a] claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) not later than one year after the accrual of the cause of action." Based on the lack of a dispute on the point, we assume without deciding the District is in substantial compliance with its registration duties. (See § 946.4.)

[3]  When the GCA applies to a claim, "[a]s a general rule, a plaintiff must present a public entity with a timely written claim for damages before filing suit against it." (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 652.) If

barrier for Williams to file a lawsuit on FEHA claims (*Snipes v. City of Bakersfield* (1983) 145 Cal.App.3d 861, 869-870 [FEHA administrative complaint procedures and GCA presentation requirements serve similar functions]), but compliance with the additional GCA procedures would apply to viable state common law claims not otherwise exempted (see § 905 [listing claims exempt from GCA presentation requirements]).

Williams's counsel followed the additional GCA procedures outlined in the District's rejection letter for all of the claims he would eventually assert in this case. Specifically, a little over two weeks after the District's letter, Williams's counsel sent a September 27, 2018 letter seeking the District's leave to file a late petition (the leave request letter), arguing he could not have earlier known about the unlawfully discriminatory conduct he was alleging. According to Williams's subsequently filed declaration on this point, "no response was ever received from [the District] or . . . college."

C. *The Leave Petition Is Granted but Williams Files His Lawsuit One Day After the FEHA Lawsuit Deadline*

Less than six months after the District's claim rejection letter, and 129 days before the FEHA lawsuit deadline, Williams filed in the trial court a February 2019 petition for leave to pursue a late claim (the leave petition). He attached to his petition, as an exhibit, a proposed complaint naming all defendants in this case, even though he

---

the six-month deadline of section 911.2, subdivision (a), is missed, "a written application may be made" directly to the entity for leave to present a late claim. (§ 911.4, subd. (a).) The entity then has 45 days to respond to the application (§ 911.6, subd. (a)) and, if either the entity explicitly denies the application or the time to respond lapses, a petition may be made to a trial court, within six months of the entity's denial, for an order relieving the petitioner from the requirement to present a claim prior to filing suit. (§ 946.6, subd. (a) & (b).) The court relief section provides in relevant part: "The court shall relieve the petitioner" (*id.*, subd. (c)) if the "failure to present [a timely] claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim" (*id.*, subd. (c)(1)).

only sought the court's leave to file a complaint against the District and the college.[4] Under these circumstances, the court continued its initial April hearing date for the petition and ordered Williams to serve the individual defendants with a copy of his petition.

The hearing for Williams's leave petition was eventually held three days before the FEHA lawsuit deadline, on Friday, June 28, 2019. Leave was granted. None of the parties' briefing for the hearing had discussed the deadline and the trial court ordered Williams to file his complaint within the next five days, by Wednesday, July 3, 2019 (the leave order). Williams complied four days later, on July 2, 2019, by filing the same complaint he had attached as an exhibit to his leave petition. In sum, Williams filed his FEHA claims in compliance with the court's leave order, but one day late under FEHA.[5]

D. *Successful Attacks on Williams's Pleadings*

After the trial court's leave order, the case was assigned to a different trial judge to litigate Williams's complaint allegations, which were ultimately defeated by the successive demurrers and a motion for judgment on the pleadings against Williams's first and second amended complaints. For purposes of this appeal, the complaints essentially asserted the same allegations based on the same five causes of action: (1) race discrimination in violation of FEHA, (2) age discrimination in violation of FEHA, (3) "failure to prevent FEHA violations and failure to investigate and correct FEHA

---

[4] For immaterial reasons, the college is not a party to this appeal.

[5] The relevant subdivision of the FEHA statute provides that a right-to-sue notice "shall indicate that the person claiming to be aggrieved may bring a civil action under this part against the person, employer, labor organization, or employment agency named in the verified complaint [filed with the DFEH] within one year from the date of that notice." (§ 12965, subd. (c)(1)(C); accord *id.*, subd.(e)(1) ["one-year statute of limitations" begins "from the date of the right-to-sue notice"].)

6

violations," (4) intentional infliction of emotional distress, and (5) negligent infliction of emotional distress.[6]

The trial court first sustained the District's demurrer, without leave to amend, against Williams's FEHA causes of action only. The court declined to apply the doctrine of equitable tolling and therefore concluded the causes of action were time-barred because they were not filed by the July 1, 2019 FEHA lawsuit deadline.

Next, the trial court granted the defendants' motion for judgment on the pleadings, against Williams's remaining common law causes of action for intentional and negligent infliction of emotional distress. On the intentional infliction of emotional distress cause of action, the court concluded the factual allegations were insufficient to show either extreme and outrageous conduct aimed at causing Williams's distress or a reckless disregard of the probability of causing distress knowing that Williams was present. For the negligent infliction of emotional distress cause of action, the court concluded that Williams failed to allege facts sufficient to support a cognizable duty to impose on the defendants for that claim.

Although the court granted Williams leave to amend his common law claims, the court sustained a subsequent demurrer against slightly modified versions of the claims in Williams's second amended complaint, without leave to amend.[7] Subsequently, a judgment for defendants was entered and Williams appealed.

_____

[6] We only discuss differences between the two complaints' factual allegations and against which defendants each cause of action was alleged where material to our analysis.

[7] We do not discuss a motion to strike that was also filed by defendants after Williams reasserted his FEHA claims in his second amended complaint. The trial court granted the motion and Williams does not challenge the ruling on appeal. (See *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 870 [general rule that plaintiff who amends a complaint rather than appeal the trial court's order waives the right to appeal any error in sustaining the first demurrer does not apply if the trial court denied the plaintiff leave to include those causes of action in an amended complaint].)

II

DISCUSSION

Williams presents two contentions on appeal:  (1) the trial court erred in sustaining defendants' demurrer against Williams's common law claims for negligent and intentional inflictions of emotional distress, and (2) the court erred when it declined to apply the doctrine of equitable tolling to his FEHA claims that were filed one day after the FEHA lawsuit deadline.  The contentions implicate different standards of review and we discuss them in turn.

A.  *Williams's Common Law Claims*

1. Standard of review and applicable principles

The trial court disposed of Williams's common law claims for negligent and intentional infliction of emotional distress first on a motion for judgment on the pleadings and then by sustaining the defendants' demurrer against essentially the same claims alleged in Williams's second amended complaint.  "A motion for judgment on the pleadings performs the same function as a general demurrer" (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 999) which we review de novo to determine whether the operative complaint alleges facts sufficient to state a cause of action or discloses a complete defense (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768).

We will affirm the resulting dismissal judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons.  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; see Code of Civ. Proc., § 589 [demurrers raise questions of law].)  "[W]e give the complaint a reasonable interpretation" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6) and "treat the demurrer as an admission by [the] defendant[] of all material facts properly pled in [the] plaintiff[']s] complaint—but not logical inferences, contentions, or conclusions of fact or law" (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152).

8

2. Williams shows no error in the trial court's rulings on his common law claims

As a threshold issue, we note the District is statutorily immune from direct liability for Williams's common law causes of action. (§ 815; see § 815.2 [grounds for vicarious liability].) Also, given the parties' briefing, we do not consider whether liability of the individual defendants is precluded under *Reno v. Baird* (1998) 18 Cal.4th 640, 663-664 (FEHA discrimination liability extends only to employers and not their agents so "[i]t would be absurd to forbid a plaintiff to sue a supervisor under the FEHA, then allow essentially the same action under a different rubric"). We also note that as a general proposition, FEHA does not necessarily displace common law claims arising from employment disputes. (See *Rojo v. Kliger* (1990) 52 Cal.3d 65, 82.)

We analyze the merits of Williams's contention he sufficiently stated facts to support his fourth and fifth causes of action for intentional and negligent infliction of emotional distress. On his second amended complaint's fourth cause of action for intentional infliction of emotional distress,[8] Williams contends both that defendants intentionally concealed their unlawful discrimination from him, but also intentionally caused him distress.

---

[8] "A cause of action for intentional infliction of emotional distress exists when there is "'"(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."'" [Citation.] A defendant's conduct is 'outrageous' when it is so ""extreme as to exceed all bounds of that usually tolerated in a civilized community.'" [Citation.] And the defendant's conduct must be ""intended to inflict injury or engaged in with the realization that injury will result.'" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.)

9

There is no reasonable reading of Williams's complaint allegations other than to understand that he is alleging the defendants intentionally concealed their unlawful discrimination against him. Accordingly, we conclude Williams cannot sufficiently state facts to support his intentional infliction of emotional distress claim because he cannot reasonably contend the defendants' conduct was either "directed primarily at [him], was calculated to cause [him] severe emotional distress, or was done with knowledge of [his] presence and of a substantial certainty that [he] would suffer severe emotional injury." (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 906.) We do not consider whether the alleged circumstances of discrimination, if true, would sufficiently constitute extreme and outrageous conduct.

Next, on Williams's second amended complaint's fifth cause of action, "[t]here is no independent tort of negligent infliction of emotional distress; rather, '[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element.'"[9] (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 205.) Williams contends: "Among [the defendants'] duties, was the obligation to '. . . adhere to written personnel policies promulgated by and governing the hiring process within the District.'" In other words, Williams contends he "adequately alleges the duty of the named defendants[] was to adhere to written personnel policies promulgated by [the District] and governing [its] hiring process."

Williams's allegations that his employment application was to be processed according to the District's hiring policies does not sufficiently show a duty that can support a negligent infliction of emotional distress claim based on a """direct victim""" theory of liability. (See *Ragland v. U.S. Bank National Assn., supra,* 209 Cal.App.4th at pp. 205-206 ["""[T]he label 'direct victim' arose to distinguish cases in which damages

---

[9] The other essential elements consist of a breach of the owed duty and findings that the breach was a substantial factor in causing harm to the plaintiff. (See CACI No. 400.)

for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two'"'"].)  In the failure-to-hire context this case presents, we decline to conclude a sufficient relationship has been shown between a job applicant (Williams) and hiring committee members (the individual defendants) that creates a duty imposing potential liability for negligent infliction of emotional distress. (Compare *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1080 [sufficient duty established by physician-patient relationship between parties] with *Ragland*, at p. 206 ["No fiduciary duty exists between a borrower and lender in an arm's length transaction"].)

In sum, Williams has not shown the trial court erred by sustaining defendants' demurrer against Williams's second amended complaint claims for intentional and negligent infliction of emotional distress.  (See *Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545, 549 ["Appellant bears the burden of demonstrating that the trial court erred"].)

B.  *Williams's FEHA Claims*

Next, as noted, when the trial court sustained the District's initial demurrer in this case, it declined to apply the doctrine of equitable tolling to Williams's FEHA claims which were filed one day after the FEHA lawsuit deadline.  As stated in its minute order sustaining the demurrer, the court found Williams's conduct during the five-day interval between the court's June 2019 leave order and Williams's filing of his lawsuit had not been reasonable and in good faith as required by the doctrine.

For the reasons stated below, we conclude that based on an earlier interval of time, the FEHA lawsuit deadline should have been equitably tolled if the trial court decides on remand that Williams acted in good faith, absent new facts that may come to

11

light on remand that are material to analysis under *Saint Francis, supra*, 9 Cal.5th 710 and *Lantzy, supra*, 31 Cal.4th at pages 370-371.

### 1. Standard of review and equitable tolling principles

We review the application or nonapplication of the equitable tolling doctrine for abuse of discretion. (See *City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1256; see also *Santa Maria v. Pacific Bell* (9th Cir. 2000) 202 F.3d 1170, 1175, 1175-1176 [applying California law], rejected on another ground in *Socop-Gonzalez v. I.N.S.* (9th Cir. 2001) 272 F.3d 1176, 1196.) "The test for abuse of discretion is whether the trial court's decision exceeded the bounds of reason. [Citation.] In applying the abuse of discretion standard, the reviewing court measures the evidence presented to the trial court against the range of options permitted by the established legal criteria. [Citation.] The scope of the trial court's discretion is limited by the governing law, and an action that ""'transgresses the confines of the applicable principles of law'"" constitutes an abuse of discretion." (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*).) A decision resting on a misunderstanding about the scope of its discretion or a misapplication of relevant law can be deemed an "abuse of discretion." (*People v. Robarge* (1953) 41 Cal.2d 628, 633-634.)

California law "presume[s] that [equitable] tolling is available in the absence of evidence to the contrary, and allow[s] courts to determine on a case-by-case basis whether tolling is warranted under the facts presented, with careful consideration of the policies underlying the doctrine." (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 730 (*Saint Francis*).)

"The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine. [Citations.] It is 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.'

12

[Citation.] Where applicable, the doctrine will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99; accord, *Saint Francis, supra*, 9 Cal.5th at p. 719.) When considering an application of the doctrine to a given case, a court must "'balanc[e] . . . the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the [operative] limitations statute'" (*Saint Francis, supra*, 9 Cal.5th at pp. 724-725) which generally exist to encourage diligence by plaintiffs and to protect defendants against stale claims (*id*. at p. 730).

Although three essential elements must be satisfied in any application of equitable tolling—"'[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff'" (*Saint Francis, supra*, 9 Cal.5th at p. 724, quoting *Addison v. State of California* (1978) 21 Cal.3d 313, 319 (*Addison*))—courts should also carefully consider each case to apply the doctrine only "'occasionally and in special situations.'" (*Saint Francis*, at p. 719, quoting *Addison*, at p. 316.) It should not be applied to "'garden variety claim[s] of excusable neglect.'" (*Saint Francis,* at p. 730, quoting *Irwin v. Department of Veterans Affairs* (1990) 498 U.S. 89, 96 (*Irwin*).)

2. Application

We discern no language in FEHA's relevant provisions that shows the one-year statute of limitations triggered by the DFEH's right-to-sue notice should not be equitably tolled. (See *Saint Francis, supra*, 9 Cal.5th at p. 723 ["Because we presume that statutes of limitations are ordinarily subject to equitable tolling, the paucity of evidence that the Legislature ruled it out compels the conclusion" the statute of

13

limitations at issue could be tolled].)[10]  Next, we discern no reasonable dispute that the first two essential elements for equitable tolling are satisfied in this case.  On the timely notice requirement, the record shows that by no less than 10 months before the FEHA lawsuit deadline occurred, Williams's 2018 claim presentation to the District "'fully notified'" defendants of Williams's intention to file suit in this case.  (*Saint Francis, supra*, 9 Cal.5th at pp. 726-727.)

For the second essential element, we also discern no reasonable dispute about "whether application of equitable tolling would prevent the defendant[s] from defending [Williams's] claim on the merits."  (*Saint Francis, supra*, 9 Cal.5th at p. 728, citing *Addison, supra*, 21 Cal.3d at p. 318.)  It would not.  Williams's 2018 claim presentation provided to the defendants a sufficient "'opportunity to begin gathering their evidence and preparing their defense'" against Williams's allegations of unlawful discrimination (*Saint Francis, supra*, 9 Cal.5th at p. 725, citing *Addison, supra*, 21 Cal.3d at p. 319), again, more than 10 months before the FEHA lawsuit deadline occurred.  Defendants do not and cannot reasonably contend they were prejudiced in their ability to defend themselves in litigation.

This leaves us to review the trial court's decision on the third essential element of equitable tolling as well as whether this case amounts to a "'special situation[]'" (*Saint Francis*, *supra*, 9 Cal.5th at p. 724) beyond a "'garden variety'" excusable neglect situation (*id.* at p. 730, quoting *Irwin, supra*, 498 U.S. at p. 96).  For the third element, the California Supreme Court recently explained it should be analyzed as "two distinct requirements:  A plaintiff's conduct must be objectively reasonable and subjectively in good faith."  (*Saint Francis,* at p. 729.)

---

[10]  We do not imply that the pursuit of compliance with the GCA should toll FEHA claims as a general proposition.  (See *Saint Francis, supra*, 9 Cal.5th at p. 719.)

Critical to this appeal, we note that "the effect of equitable tolling is that the limitations period *stops running* during the tolling event and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370-371 (*Lantzy*).)

In this case, the trial court's minute order supports a conclusion that the court's decision-making process did not rest on the tolling mechanics discussed in *Lantzy, supra*, 31 Cal.4th at pages 370-371. That is, the court provided reasons not to apply equitable tolling that focused on the five-day interval between the court's leave order and Williams's complaint filing in 2019 (the five-day interval)—i.e., the interval in which the FEHA lawsuit deadline occurred. Specifically, the court found that: (1) nothing had prevented Williams from timely filing his complaint on either the Friday or Monday preceding the lawsuit deadline, (2) Williams's explanation for why he did not do so failed to "square with the record," which "belie[d]" the explanation, and (3) Williams had failed to show "he brought the deadline to [the trial court]'s attention[,] sought to advance the hearing on his [leave] petition, or took any other reasonable action to timely file his [lawsuit]." The court stated: "[F]or all of these reasons, the court cannot conclude that [Williams] has shown reasonable and good faith conduct warranting equitable tolling."

The trial court's conclusions on the above three points were sound as a matter of logic and, if the five-day interval were the only interval in which equitable tolling could apply in this case, we would conclude the court's findings are supported by substantial evidence and affirm the denial of tolling. (*Cornerstone, supra*, 56 Cal.App.5th at p. 789 ["The trial court's factual findings are reviewed under the substantial evidence standard while the trial court's legal conclusions are reviewed de novo"].) But based on *Lantzy, supra*, 31 Cal.4th at pages 370-371, the trial court's

15

findings on equitable tolling ignored the doctrine's potential application to intervals of time that preceded the five-day interval. (See *Saint Francis, supra*, 9 Cal.5th at p. 726 [mistake in calculating the filing deadline was not necessarily fatal for application of equitable tolling]).

In other words, the issue went unaddressed whether to apply equitable tolling based on other time intervals preceding the five-day interval, such as the interval between the District's September 2018 claim rejection letter and Williams's leave request letter 16 days later (the 16-day interval), which Williams discussed in his opposition to the District's initial demurrer. Based on *Lantzy, supra*, 31 Cal.4th at pages 370-371 and *Saint Francis, supra*, 9 Cal.5th at page 729, if Williams's conduct during that interval was objectively reasonable and subjectively undertaken in good faith, the third essential element of equitable tolling would be satisfied.

In *Saint Francis, supra*, 9 Cal.5th 710, the California Supreme Court remanded the matter back to the Court of Appeal to determine whether the third essential element of equitable tolling had been satisfied. (*Id*. at p. 731.) In that case, the hospital plaintiff had been fined by the State Department of Public Health, then unsuccessfully asked the department to reconsider its fine order, and then miscalculated the time it had to file a petition for a writ of administrative mandate against the department. (*Id.* at pp. 717-719 & fn. 3 [hospital mistakenly thought it had had more time because it sought reconsideration].) During the time of the hospital's misunderstanding, the department's counsel had expressed agreement with the hospital's miscalculation. (*Id.* at p. 718 [writing to hospital's counsel "'I believe you are correct,'" four days after the statute of limitations had already lapsed].)

On remand, the Court of Appeal concluded the third essential element of equitable tolling was not satisfied because the hospital's conduct had been objectively unreasonable. (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2021) 59 Cal.App.5th 965, 980 (*Saint Francis II*).) The *Saint Francis II* court considered

16

whether the hospital's actions had been "'fair, proper, and sensible in light of the circumstances'" (*id.* at p. 977, quoting *Saint Francis, supra*, 9 Cal.5th at p. 729) and reasoned that "the balance of" the conduct had not been reasonable because the hospital simply had failed "to appreciate easily ascertainable legal principles" stated in statutory language (*Saint Francis II,* at p. 975). The *St. Francis II* court explicitly noted no other ground for tolling had been asserted other than the single time interval it analyzed. (*Id.* at p. 979.)

The reasoning on objective unreasonableness in *Saint Francis II* is consistent with the California Supreme Court's guidance and we take no issue with the analysis. That said, the case does not support a conclusion that Williams's conduct during the 16-day interval in this case was objectively unreasonable. Indeed, to the extent the trial court's minute order statement that Williams did not take "any other reasonable action to timely file his" lawsuit can be read as applying outside of the five-day interval, we would conclude the finding amounted to an abuse of discretion, given the totality of the circumstances in this case.

Williams's conduct during the 16-day interval was objectively reasonable. Although defendants correctly note that Williams's August 2018 presentation of FEHA claims to the District was not legally necessary because FEHA claims are not subject to the GCA's presentation requirements (*Snipes v. City of Bakersfield, supra*, 145 Cal.App.3d at pp. 869-870) it does not necessarily follow that Williams's claim presentation is rendered unreasonable. (*Saint Francis, supra*, 9 Cal.5th at p. 725 ["even in cases where a party seeking tolling pursued an alternative remedy, we've concluded that pursuit of a remedy 'embarked upon in good faith, [yet] found to be defective for some reason,' doesn't foreclose a statute of limitations from being tolled"]; *McDonald v. Antelope Valley Community College Dist.*, *supra*, 45 Cal.4th at p. 101 ["equitable tolling

17

may extend even to the *voluntary* pursuit of alternate remedies"].)[11] We focus not on whether Williams correctly or incorrectly pursued an alternative remedy before filing his lawsuit, but whether that pursuit was objectively reasonable and subjectively done in good faith.

Because of the specific circumstances surrounding Williams's discrimination allegations in this case, it is reasonably arguable he possessed a common law claim against the individual defendants that could have subjected the District to vicarious liability. (See §§ 815, 815.2.) The fact that Williams alleged common law claims for negligent and intentional infliction of emotional distress supports a conclusion his conduct in attempting to comply with GCA presentation requirements was reasonable. That defendants' motion for judgment on the pleadings and demurrer against the claims were later successful against the common law claims does not necessarily undercut a conclusion that it was objectively reasonable to allege them at the outset. Given the circumstances, it was reasonable for Williams to opt to comply with the GCA presentation requirements, so that any future assertion of viable common law claims subject to the requirements would not be barred.

---

[11] In their supplemental briefing on equitable tolling, the defendants cite to *Javor v. Taggart* (2002) 98 Cal.App.4th 795, 805, to argue that equitable tolling should not be applied where an initially pursued remedy—in that case administrative relief against an invalid workers compensation lien—was legally distinct from a later pursued remedy for a different legal wrong—a federal civil rights claim. *Javor* does not support a conclusion that equitable tolling should not be applied here. The holding in that case on equitable tolling turned on the absence of at least one of the first two essential elements for tolling to apply. (*Id.* at pp. 803-804 [because the civil rights defendant had not been involved in the plaintiff's earlier administrative claim, the defendant had not been """"informed at all times of the nature of"""" the plaintiff's claim].) To the extent defendants are attempting to analogize *Javor* to this case, the undisputed satisfaction of the first two essential elements here make *Javor* factually inapt and therefore unpersuasive.

Next, demonstrating that this case presents a "'special situation'" for equitable tolling analysis (*Saint Francis, supra*, 9 Cal.5th at pp. 719, 724) is the above point on objective reasonableness combined with the facts that, at the time of the 16-day interval, the District had at least impliedly represented to Williams that the GCA applied to all of his claims and insisted that his "only recourse" was to comply with additional GCA procedures. Defendants' conduct on these points materially influenced the course of the timeline that ultimately ended with Williams's untimely filing of his FEHA claims.

Finally, we discern no dilatory conduct by Williams through the 16-day interval. His conduct was objectively reasonable and we conclude the totality of circumstances shown by the record presented qualify this case as a special situation warranting equitable tolling meant "to 'soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.'" (*Saint Francis, supra*, 9 Cal.5th at p. 719.)

What remains unanswered is the final "distinct requirement" of the third essential element necessary for equitable tolling: whether the "plaintiff's conduct" was committed "subjectively in good faith." (*Saint Francis, supra*, 9 Cal.5th at p. 729 ["whether it was the result of an honest mistake or was instead motivated by a dishonest purpose"].) Because of the trial court's focus on the five-day interval, there exists no credibility determinations or findings of fact to review for substantial evidence for other intervals, including the 16-day interval in 2018 discussed above. This court is not in a position to make the necessary determinations and resolve evidentiary conflicts in the first instance. Accordingly, we will direct the trial court to reevaluate Williams's arguments for equitable tolling, including receiving evidence and hearing argument anew on any aspect of analysis under *Saint Francis, supra*, 9 Cal.5th 710 and *Lantzy, supra*, 31 Cal.4th at pages 370-371.

19

## III

### DISPOSITION

The judgment is affirmed as to Williams's common law causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress. The judgment is reversed as to Williams's statutory causes of action based on FEHA and the matter is remanded to the trial court for a new hearing to decide, consistent with this court's opinion, whether to apply the doctrine of equitable tolling. In the interests of justice, no costs on appeal are awarded. (Cal. Rules of Court, rule 8.278(a)(5).)


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


ZELON, J.*

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20